**Larry WAJDA, et al., Respondents,**

v.

**Jonathan KINGSBURY, et al., Appellants.**

No. C2–02–90.

Court of Appeals of Minnesota.

Sept. 10, 2002.

Jay M. Heffern, Minneapolis City Attorney, William C. Dunning, Assistant City Attorney, Minneapolis, MN, for appellant.

Michael A. Zimmer, Tina M. Dobbelaere, Tewksbury, Kerfeld, Zimmer, Minneapolis, MN, for respondents.

Considered and decided by STONEBURNER, Presiding Judge, TOUSSAINT, Chief Judge, and SCHUMACHER, Judge.

## OPINION

TOUSSAINT, Chief Judge.*

This action arose out of a collision between a police squad car and a tow truck. An issue at trial was whether the squad car's siren had been activated. The jury returned a verdict for the tow truck operator, and the district court denied appellants' motion for new trial. Appellants contend that the district court erroneously instructed the jury that it could make an adverse inference from appellants' failure to produce a tape that might have corroborated evidence as to the siren because (1) no evidence that has been shown to exist has been destroyed; (2) there was no finding that the tape, if it existed, was critical to respondents' case; and (3) respondents did not suffer prejudice because they were not placed at an evidentiary disadvantage. Because the district court did not abuse its discretion, we affirm.

## FACTS

This action arose out of a May 1997 collision between a police squad car and a tow truck, resulting in personal injuries and property damage. Appellant Jonathon Kingsbury, a Minneapolis police officer, was driving a squad car, accompanied by Officer Gary Nelson. Terrance Wojtowicz was driving the tow truck, owned by respondents Larry Wajda and L & L Towing.[1] In 1999, Officer Nelson and his wife

---

* The Honorable Daniel F. Foley, one of the founding members of this court, who continued to serve by appointment order from the supreme court after his retirement, fully participated in the consideration of this appeal. Due to Judge Foley's untimely death before the filing of the opinion, Chief Judge Toussaint has been assigned as a substitute, and now joins the panel in issuing this decision.

1. Larry Wajda was the principal owner of L & L Towing, which was a subcontractor for

brought a personal injury lawsuit against Wojtowicz and Wrecker Services for injuries sustained in the collision. Wojtowicz and Wrecker Services brought a third-party action against appellant City of Minneapolis, seeking contribution for any damages awarded to the Nelsons, and the city counterclaimed for damages to the squad car and for workers' compensation benefits paid to Officer Nelson. L & L Towing and Wajda filed a complaint against the city and Officer Kingsbury for property damage to the tow truck, alleging negligence by Kingsbury. The district court consolidated the cases.

The city moved for summary judgment, claiming official immunity for itself and Officer Kingsbury, and the district court granted the city's motion. This court reversed the district court's grant of summary judgment and remanded for trial. *Nelson v. Wrecker Servs., Inc.,* 622 N.W.2d 399 (Minn.App.2001). The case proceeded to trial, where the only claim remaining for trial was Wajda's claim against the city and Officer Kingsbury for property damages and lost income.

At trial, a primary issue was whether the squad car's siren had been activated. Wojtowicz testified that he was traveling eastbound on 10th Avenue toward the intersection of 10th Avenue and Washington, with the truck windows open, and that the traffic light was green as he entered the intersection. Wojtowicz stated that he noticed a car to his right, facing north, that was stopped inside the northbound lane on Washington. He noticed overhead lights when the squad car was "almost hitting" him. Wojtowicz did not hear a siren and was never cited for any traffic violations in connection with the incident.

Officer Kingsbury testified that after receiving a radio dispatch that a knife fight was taking place nearby, the officers responded to the call, activating the squad car's red lights and siren. Kingsbury stated that he traveled northbound on Washington Avenue, and as he approached the intersection of Washington and 10th Avenues, he noticed a car stopped at the intersection in the left-hand lane. Kingsbury also testified that the light turned green, he changed lanes to go around the right side of the stopped car, entered the intersection, and "[a]ll of a sudden there was a collision." Kingsbury testified that he had activated the siren. Officer Nelson did not testify at trial, but portions of his deposition were read to the jury. Nelson testified that the squad car's emergency lights and siren were activated when the officers proceeded through the intersection. Nelson stated that he observed the traffic light change from red to green when the squad car was about a block to one-and-one-half blocks from the intersection.

The driver and passenger of the vehicle that was stopped at the light on Washington Avenue testified at trial. The driver testified that he stopped at the light because it had just turned red, he saw emergency lights approach from behind, and he did not hear a siren. The passenger testified that he had his window cracked and first saw the squad car as it passed them, and that "there was definitely no siren there at all."

The parties do not dispute that the Minneapolis Emergency Communications Center records radio transmissions between officers in squad cars and the dispatch center and that the city's policy is to reuse or tape over the tapes after 60 days. The tapes only record what is broadcast by radio to and from police officers. Kingsbury agreed that it was "very possible" that Nelson spoke to dispatch again be-

Wrecker Services, Inc., at the time of the accident.

tween the time of the initial call and the time they reached the intersection where the accident occurred. Kingsbury agreed that if Nelson spoke with dispatch during the period and a tape were made of the conversation, a person might be able to hear the siren if it had been activated. Kingsbury testified that Nelson contacted the dispatcher to report the accident after it occurred.

At the conclusion of trial, the district court instructed the jury that

> [t]estimony has been introduced indicating that a police dispatch tape recording existed which may have shown whether a siren was activated and, if so, when it would have been activated. The tape recording was in the possession and control of the City of Minneapolis. The tape recording no longer exists. You are permitted (but are not required) to infer from this fact that the, quote, "siren evidence" is favorable to plaintiff. Weigh this along with all other, quote, "siren testimony" in this case.

The jury returned a verdict for the tow truck operator, finding Kingsbury to be 80% at fault and Wojtowicz to be 20% at fault. The jury specifically found that the siren was not activated. Appellants moved for a new trial, arguing that the district court erroneously instructed the jury that it could take an adverse inference from appellants' failure to produce a tape that might have corroborated evidence as to the siren. The court denied appellants' motion for new trial. This appeal follows.

## ISSUE

Did the district court abuse its discretion by imposing sanctions for spoliation of evidence?

## ANALYSIS

■■ Spoliation is the destruction of evidence. *Federated Mut. Ins. Co., v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990). The district court has broad authority in determining what, if any, sanction is to be imposed for spoliation of evidence. *Patton v. Newmar Corp.,* 538 N.W.2d 116, 119 (Minn.1995). On review, an appellate court considers whether the district court is authorized to impose a sanction for spoliation of evidence and, if so, whether it abused its discretion by imposing such a sanction. *Id.* at 118. A party challenging the district court's choice of sanction must meet the difficult burden of convincing an appellate court that the district court abused its discretion; the burden is met "only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate." *Id.* at 119 (quotation omitted). The appropriateness of a sanction for spoliation of evidence is determined by the prejudice to the opposing party.[2] *Hoffman v. Ford Motor Co.,* 587 N.W.2d 66, 71 (Minn.App.1998).

■ First, appellants argue that the district court improperly imposed the sanction of a jury instruction because no evidence shown to exist has been destroyed. But the district court found that credible evidence from the city's witness established that a recording or recordings were likely to have existed. *See Jorschumb v. Jorschumb,* 390 N.W.2d 806, 812 (Minn. App.1986) (stating that district court is given discretion to determine credibility of witness testimony), *review denied* (Minn.

---

**2.** Appellant asserts that the abuse-of-discretion standard of review is inappropriate where a district court misstates the law in jury instructions. *See Apache Plaza, Ltd. v. Midwest Sav. Ass'n,* 456 N.W.2d 729, 733 (Minn.App.1990) (stating that new trial should be granted where instruction is erroneous and appellate court is unable to determine if error affected jury). But the district court's instruction resulted from imposition of sanctions, and *Patton* sets forth the standard of review for spoliation sanctions.

Aug. 27, 1986). The transcript shows that Officer Kingsbury agreed that it was "very possible" that Officer Nelson spoke with the dispatcher during the time period from when the officers received the call to reaching the intersection of the accident. Based on that testimony, we cannot conclude that the district court clearly erred in finding that evidence likely existed. *See Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn.1999) (stating that district court's factual findings must be clearly erroneous to warrant reversal).

■ Second, appellants argue that the district court failed to make a specific finding that the tapes were critical to respondents' case. But in its order denying appellants' motion for new trial, the district court stated that "there was testimony * * * that it was likely that an audio recording or recordings were made of events central to the facts of the trial" and that "[t]his testimony demonstrated the relevance of the recording," whether it supported respondents' or appellants' position. Minnesota law requires that officers activate the emergency siren

> when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety, but may proceed cautiously past such red or stop sign or signal after sounding siren and displaying red lights.

Minn.Stat. § 169.03, subd. 2 (2000). As the district court correctly recognized, a "central part" of appellants' case was the contention that the squad car's siren was activated during a particular time. Accordingly, the tape was "critical," and the district court's finding was not clearly erroneous.

■ Third, appellants assert that respondents did not suffer prejudice because the city did not obtain an evidentiary advantage over respondents, as it was equally likely that the tape would favor the police officers and not respondents. We disagree. The "workable standard by which to test the impact of the spoliation" is to consider the prejudice to the opposing party. *Patton*, 538 N.W.2d at 119. This consideration requires an examination of the nature of the item lost and the potential for remediation of the prejudice. *Id.* An appellate court considers whether the district court's finding of prejudice was clearly erroneous. *Hoffman*, 587 N.W.2d at 71.

■ The parties do not dispute that it is unknown what the tapes would reveal; the tapes could favor either party, depending on whether a siren could be heard in the background. But Minnesota "permits an unfavorable inference to be drawn from failure to produce evidence in the possession and under the control of a party to a litigation." *Federated Mutual Ins.*, 456 N.W.2d at 436 (quotation omitted). The jury may infer that "the evidence, if produced, would have been unfavorable to that party." *Id.* at 437 (quotation omitted). Additionally, the doctrine of spoliation applies where the party responsible for the evidence's destruction had exclusive control and possession of the evidence. *Kmetz v. Johnson*, 261 Minn. 395, 403, 113 N.W.2d 96, 101 (1962). The city had exclusive control and possession of the tapes.[3]

---

**3.** Appellant also cites the unpublished case, *Falde v. Bush Bros. & Co.*, 2001 WL 1117801 (Minn.App.2001). But *Patton* remains the law on spoliation of evidence in Minnesota, and *Falde* is distinguishable on its facts and is not determinative of this appeal. *See* Minn. Stat. § 480A.08, subd. 3 (2000) (stating "[u]npublished opinions of the court of appeals are not precedential"). In *Falde*, plaintiff sued defendant alleging she suffered chemical burns after eating beans manufactured by defendant. Plaintiff threw away the can of

Because (1) the city had exclusive possession of the tapes, (2) testimony established that the evidence likely existed, and (3) the law permits an adverse inference to be drawn from the failure to produce evidence, the district court was not clearly erroneous in concluding that respondents were prejudiced.

Appellants, citing several extra-jurisdictional cases and treatises to support their position, argue that an adverse inference may be taken from the destruction or failure to produce evidence only when the record shows that the evidence was intentionally withheld or destroyed. *See e.g., State by Comm'n. of Transp. v. Council in Div. of Resource Dev.,* 60 N.J. 199, 202, 287 A.2d 713, 715 (N.J.1972) (stating that conscious awareness of dispute with another and conscious awareness that an act done will destroy evidence is prerequisite to permitting adverse inference); *Berthold–Jennings L. Co. v. St. Louis, I.M. & S.R. Co.,* 80 F.2d 32 (8th Cir.1935), *cert. denied* 297 U.S. 715, 56 S.Ct. 591, 80 L.Ed. 1001 (1936) (stating that spoliation rule can be applied only where there was intentional conduct indicating fraud and a desire to destroy); 29 Am.Jur.2d. Evidence § 244 (stating that adverse inference permitted only where act was intentional and indicates fraud and desire to suppress truth). *But see Anderson v. Litzenberg,* 115 Md. App. 549, 561, 694 A.2d 150, 156 (Md.App. 1997) (disagreeing with *State, by Comm'n of Transp.* and *Berthold–Jennings* and listing authorities that recognize that bad faith is not prerequisite to drawing adverse inference against spoliator). Minnesota appellate courts have never cited the cases on which appellants rely; those cases do not express the law in Minnesota and are not persuasive in this appeal.

The law in Minnesota is that spoliation of evidence need not be intentional to warrant sanctions. *See Patton,* 538 N.W.2d at 119; *Himes v. Woodings–Verona Tool Works, Inc.,* 565 N.W.2d 469, 471 (Minn.App.1997) (concluding that imposition of sanctions was not an abuse of discretion where evidence was destroyed through inadvertence or negligence), *review denied* (Minn. Aug. 26, 1997). In *Patton,* the supreme court considered the negligent or inadvertent destruction of evidence that was critical to a party's design-defect products liability case, namely a motor home and several removed parts. *Patton,* 538 N.W.2d at 117. In concluding that the district court did not abuse its discretion by imposing spoliation sanctions that ultimately resulted in dismissal of plaintiffs' case, the supreme court adopted the standard set forth in *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263 (8th Cir. 1993), for use in spoliation cases where evidence critical to a party's claims has been destroyed by inadvertence or negligence. *Dillon* recognized that "the destruction of evidence that a party knew or should have known was relevant to imminent litigation certainly justifies a sanction under the court's inherent power." *Dillon,* 986 F.2d at 268.

Here, the district court exercised its inherent power to impose the sanction of a jury instruction, concluding that the impact of spoliation was prejudice to the opposing party. The district court found

beans on the same evening she ate a spoonful of the beans. We agreed that the issue of sanctions was moot because the lack of physical evidence affected both parties equally and neither party had access to the evidence. But unlike *Falde* where neither party had access to the evidence almost immediately after the injury, the city had exclusive and unlimited access to the tape for 60 days. And unlike *Falde,* where an expert was required to examine the beans, no expert was required here. Anyone could have listened to the tape and ascertained whether a siren could be heard in the background.

that the city and officers should have known that "litigation or the possibility of litigation was imminent fairly soon after the incident" because the accident involved injuries. Officers Kingsbury and Nelson hired an attorney to pursue their personal injury claims four days after the accident. This was well within the city's 60–day policy for reusing tapes. The district court denied appellants' motion for new trial in a ten-page order and memorandum, and, at the hearing on appellants' motion for new trial, the court discussed at length its intent to deny appellants' motion and its reasons for doing so. The district court recognized that the record did not reflect any intentional attempt to hide evidence, but the court stated that it "could not ignore, if you will, and I don't want to make it sound like the Watergate tapes, but could not ignore the missing tape." The court further gave ample and sound reasons for using its broad authority in determining what, if any, sanction is to be imposed:

> I do find, however, that as a matter of policy that the City does have to be held to the same standard as every other litigant that comes in here. And I say that with all due respect realizing some of the burdens that they undertake because of the public nature of their business and the important nature of their business, and especially the importance of the police officers * * *.

> But it is also my opinion that we have to be fair and we have to be held to the same standard. And where you have a car accident such as this with what might have been even more severe injuries * * * [f]rom the fact of an accident alone I think one can anticipate litigation. And at the point where one is anticipating litigation, I think we have to take steps to preserve evidence that's relevant to the inquiry that may take place, not only of the pictures of the scene and the drawings and the injuries and the medical records and the eyewitness testimony, but also any evidence such as the tape recordings here or any other if you will, any other matters that are helpful to the trier of fact in deciding fault, liability, and/or criminal conduct. * * *

> So I think the City should consider changing its policy. And I think that I can understand why they have a policy and the expense to the taxpayers of tape recordings and the difficulty when one combines all the work * * *, one understands why one might erase at the end of sixty days. I still think we have to be mindful of anticipated litigation in certain areas, and I think steps should be taken to preserve that type of evidence, especially where a squad car might be involved in an accident and we do know that the mere presence of a siren may change the legal status of a party in terms of the immunity available to them.

Not only did the district court express ample reasoning for its decision to exercise its inherent power, but it also chose the least severe of available sanctions. Moreover, we note that because Wojtowicz and two independent witnesses testified that the siren was not activated, any prejudice to appellants as a result of the sanctions, if any, was minimal. *See Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn.1997) (stating that new trial only warranted when complaining party demonstrates prejudicial error). The district court's findings are not clearly erroneous. Because the district court extensively discussed its reasons for imposing sanctions, appellants have failed to establish that "no reasonable person would agree" with the district court's assessment of what sanctions are appropriate. See Patton, 538 N.W.2d at 119. Accordingly, we conclude the district court did not abuse its discre-

tion by instructing the jury on spoliation of the evidence.

■■■ Finally, appellants argue that Patton is limited to spoliation of evidence in product liability cases. But we find no authority limiting Patton to product liability cases. Patton applies to any case where critical evidence has been destroyed. See Patton, 538 N.W.2d at 119 (stating that standard to test impact of spoliation is to consider prejudice to opposing party, including an examination of nature of item lost and potential for remediation of prejudice). We hold that when evidence critical to a party's claim is under the exclusive control of an adverse party and the evidence is destroyed, whether accidentally or otherwise, the district court has discretion to permit the jury to make an unfavorable inference from that fact.

## DECISION

The district court did not abuse its discretion by imposing sanctions in the form of a jury instruction permitting an adverse inference against the city for failure to produce the tape recording when the city had exclusive control and possession of the tape, when the tape was critical to the case, and when the destruction prejudiced respondents.

**Affirmed.**