JESSON, Judge
After the criminal portion of a DWI arrest-the traffic stop, field sobriety tests, and chemical test-the civil proceeding generally begins with a notice and order of driver's license revocation. This document serves to provide drivers notice that the state intends to revoke their licenses. Appellant Steven Chadwick Gray, an out-of-towner from Iowa, received a notice and order of revocation following a failed breath test at the sheriff's office. But in the midst of being transported to detox, the notice was left behind. A few days later, the notice and order of revocation was mailed to him. Gray requested an implied-consent hearing at which he contended that his license revocation should be rescinded because his due-process right was violated in light of not receiving the revocation notice and because of an ambiguity in the notice stemming from his driver's license being issued by Iowa, not Minnesota. The district court disagreed, determining that Gray properly received the notice, and due to his own conduct, left the document behind. We affirm.
FACTS
In the early hours of July 6, 2017, a deputy pulled over a car driven by appellant Steven Chadwick Gray on suspicion of driving under the influence. The deputy soon learned that Gray had an Iowa driver's *222 license. Gray was ultimately arrested and transported to the Dodge County sheriff's office, where he was administered-and failed-a breath test. Following the breath test, the deputy turned his attention to the civil side of the arrest-revoking Gray's Minnesota driving privileges. This process starts with a notice and order of revocation.
At the Dodge County sheriff's office, the notice and order of revocation document is generated electronically on a computer. This document states that because Gray failed to pass a breath test: "the commissioner of the Minnesota Department of Public Safety will revoke your Minnesota driver's license, permit, or nonresident operating privilege on 7/13/2017 1:59 AM. The revocation period is for 1 year(s)." This July 13 time and date was seven days from the time the form was provided. The document then explained the steps Gray would need to complete to have his Minnesota driving privileges reinstated, along with the procedures to request or petition for review of the revocation. And important to this appeal, the notice states in bold letters that "No temporary license issued because driver is currently under withdrawal, not licensed or is not licensed in Minnesota."
Both Gray and the deputy electronically signed the document. For Gray, this meant he signed a "little signature pad." The deputy printed off the signed form and provided it to Gray. The deputy then briefly described the form to Gray, explained to Gray that the form was important, and suggested that Gray should read through it.
After completing the revocation form, the deputy transported Gray to detox. When the deputy returned to the sheriff's office, he noticed that Gray "had left the paperwork in the shuffle of getting him ready to transport to" detox. The deputy then had someone at the office send the paperwork, via certified mail, to Gray. This certified mail was marked July 10, 2017 as the date sent.
In November 2017, Gray requested an implied-consent hearing at which he argued that the license revocation should be rescinded because, among other reasons, his right to due process was violated because he did not receive the notice of revocation.[1] At the hearing, the deputy who arrested Gray testified to the above facts and explained that he believed Gray simply left the form at the sheriff's office:
THE COURT: So what happens, he just leaves his stuff-papers on the table?
THE [DEPUTY]: I believe that's what happened, yes.
THE COURT: Okay.
THE [DEPUTY]: And I got back, noticed that, and got them prepared for the mail right away.
THE COURT: Okay. So you gave him some paperwork and then he just left it at the office?
THE [DEPUTY]: Yep.
THE COURT: Okay.
The deputy also testified that there was no available video recording of Gray at the sheriff's office because the video recorder malfunctioned. The district court denied Gray's motion to rescind the driver's license revocation, reasoning that his challenge was outside the scope of permitted arguments at implied-consent hearings and that it lacked merit.
Gray appeals.
*223 ISSUES
I. Are procedural due-process arguments permitted at implied-consent hearings?
II. Were Gray's procedural due-process rights violated by the procedure in this case?
ANALYSIS
On appeal, Gray contends that his procedural due-process rights were violated because he did not receive adequate notice of his rights before his revocation went into effect.[2] Before addressing Gray's arguments on the merits, we must first answer the threshold question: can a district court consider a procedural due-process argument at an implied-consent hearing when it is not expressly permitted under Minnesota Statutes section 169A.53, subdivision 3(b) (2016)?[3] Because we conclude that a petitioner can raise such an argument, we then consider the merits of Gray's contention.
I. Procedural due-process arguments are permitted at implied-consent hearings.
We first address whether a due-process argument regarding the adequacy of notice can be raised at an implied-consent hearing, a question that the district court answered in the negative. Because this issue presents a question of statutory interpretation, this court reviews the issue de novo. Axelberg v. Comm'r of Pub. Safety , 848 N.W.2d 206, 208 (Minn. 2014).
Minnesota Statutes section 169A.52, subdivision 4 (2016), states that upon a failed alcohol test, the commissioner shall revoke an individual's "license or permit to drive, or nonresident operating privilege ." (Emphasis added.) The statute explains that the peace officer "shall serve immediate notice of intention to revoke and of revocation on a person who refuses to permit a test or on a person who" fails an alcohol test. Minn. Stat. § 169A.52, subd. 7(a) (2016). And the statute states that the revocation is effective "at the time the commissioner or a peace officer acting on behalf of the commissioner notifies the person of the intention to revoke, disqualify, or both, and of revocation or disqualification." Minn. Stat. § 169A.52, subd. 6 (2016).[4]
Along with serving a notice of intention to revoke, the officer shall:
(1) invalidate the person's driver's license or permit card by clipping the upper corner of the card in such a way that no identifying information including the photo is destroyed, and immediately return the card to the person;
(2) issue the person a temporary license effective for only seven days; and *224 (3) send the notification of this action to the commissioner along with the certificate required by subdivision 3 or 4.[5 ]
Minn. Stat. § 169A.52, subd. 7(c) (2016).
Individuals are entitled to seek administrative or judicial review after receiving a notice and order of revocation. Minn. Stat. § 169A.53, subds. 1-2 (2016). For a judicial-review hearing, also known as an implied-consent hearing, the statute explicitly limits the issues that can be addressed. Minn. Stat. § 169A.53, subd. 3 (2016) (stating that the "scope of the hearing is limited to the issues" listed). Arguments concerning procedural due process are not among the listed issues.
Whether an argument not listed in Minnesota Statutes section 169A.53, subdivision 3(b), can be raised at an implied-consent hearing was addressed in Axelberg , where the Minnesota Supreme Court was faced with a petitioner who attempted to raise a necessity defense at an implied-consent hearing. 848 N.W.2d at 207-08. Through a statutory-interpretation analysis, the supreme court determined that because the necessity defense was not one of the delineated issues in the statute, the individual could not raise the defense.[6] Id. at 208, 212. It reasoned that the language in the statute, "[t]he scope of the hearing is limited to the issues" listed, meant exactly that-the legislature limited the issues that can be raised. Id. at 208-09.
Before us is a similar situation as that faced by the Axelberg court, but with a distinct difference. Here, as in Axelberg , Gray attempted to raise an issue outside the scope of Minnesota Statutes section 169A.53, subdivision 3(b), at the implied-consent hearing. But Gray's argument concerned his constitutional right to procedural due process, unlike the issue from Axelberg , which considered the common-law defense of necessity. 848 N.W.2d at 206 (noting that the defense of necessity is a common-law defense). We discern that this distinction-between a common-law affirmative defense and the constitutional right to due process-is significant, and conclude that Gray can raise a due-process argument at his implied-consent hearing.
It is the critical nature of the constitutional right to due process, and its guarantee of fundamental fairness, that drives our determination. The importance of due process in judicial proceedings cannot be overstated, as it "is the primary and indispensable foundation of individual freedom." Application of Gault , 387 U.S. 1, 20, 87 S.Ct. 1428, 1439-40, 18 L.Ed.2d 527 (1967) (describing due process as "the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise"). The hallmark of the procedural protections afforded by the due process clause is "fundamental fairness." Ford v. Wainwright , 477 U.S. 399, 424, 106 S.Ct. 2595, 2609, 91 L.Ed.2d 335 (1986). And while difficult to define exactly what procedural due process requires, courts have explained that it is this "fundamental fairness" that must be ascertained for a given situation. Lassiter v. Dep't of Soc. Servs. , 452 U.S. 18, 24-25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981). And proper notice is engrained in the concept of due process. Lambert v. California , 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957). Simply put, as Justice Marshall explained, "it is procedural due process that is our fundamental guarantee of fairness, our *225 protection against arbitrary, capricious, and unreasonable government action." Bd. of Regents v. Roth , 408 U.S. 564, 589, 92 S.Ct. 2701, 2715, 33 L.Ed.2d 548 (1972) (Marshall, J., dissenting). Because of the importance of due process, it would be improper to determine that an individual cannot raise procedural due-process concerns at an implied-consent hearing.
Furthermore, while the Minnesota Legislature may limit what arguments can be raised at an implied-consent hearing, it cannot legislate away constitutional rights. See Davidson v. Farrell , 8 Minn. 258, 263, 8 Gil. 225, 229 (1863) (stating that while the legislature has broad power to regulate judicial proceedings, it may not conflict with constitutional rights). To hold otherwise would prevent individuals from protecting their constitutional right to a fundamental guarantee of fairness and leave them without recourse from the state violating the notice requirements set forth for license revocations.[7] The Minnesota Supreme Court has stressed the importance of the legislature not restricting fundamental rights, such as notice before judicial proceedings. See Bardwell v. Anderson , 44 Minn. 97, 102, 46 N.W. 315, 317 (1890) (stating that due process does not "mean anything which the legislature may see fit to declare to be such; for there are certain fundamental rights ... which not even the legislature can disregard in proceedings by which a person is deprived of life, liberty, or property; and one of these is notice before judgment in all judicial proceedings"). Individuals at a judicial hearing to contest the state's revocation of their licenses or driving privileges have the right to argue that the state acted in a fundamentally unfair fashion concerning the notice it provided.
Because individuals have the right to raise procedural due-process arguments at implied-consent hearings, we disagree with the district court's determination that Gray's arguments were not properly before it and now address his contentions on the merits.
II. Gray's due-process rights were not violated.
Gray contends that his right to procedural due process was violated by (1) the lack of notice or service of the notice and order of revocation; (2) not receiving a seven-day temporary hardship license; and (3) the conflicting language in the notice and order of revocation. We address each argument in turn.
Gray received the notice and order of revocation in an adequate manner.
Gray contends that his right to due process was violated because he failed to receive notice of his revocation. Gray argues that he was mailed the notice four days after it went into effect, and assuming three days for delivery, he failed to receive notice of his revocation or his rights before his revocation became effective. We disagree, as the record does not support this argument. At the implied-consent hearing, the deputy testified that he personally provided the notice to Gray while at the sheriff's office and that Gray left it behind. The district court found this testimony credible and found that Gray received actual notice.
Caselaw further supports this determination. In Johnson v. Comm'r of Pub. Safety , the deputy testified that he placed *226 the notice and order of revocation on the desk in front of the appellant, and he could not remember if the appellant picked up the form. 394 N.W.2d 867, 868 (Minn. App. 1986). The district court determined this was sufficient notice, and this court affirmed, stating:
The trial court's findings that the service was made by "handing to and leaving with" Johnson a properly executed copy of the notice and order is a permissible characterization of the testimony. The trial court was entitled to believe the testimony of the officer rather than the testimony of the driver. The finding is not clearly erroneous.
Id. at 869. Similarly here, the district court acted within its proper fact-finding role when it determined that Gray received actual notice in light of the deputy's testimony that Gray received the document while at the sheriff's office.[8]
Gray next argues that under the spoliation doctrine, an adverse inference in his favor-that he never received notice-is required because the video recorder at the sheriff's office malfunctioned. We disagree. For a claim of spoliation to be successful, the moving party must show that the opposing party had exclusive control and possession of the evidence. Wajda v. Kingsbury , 652 N.W.2d 856, 861 (Minn. App. 2002), review denied (Minn. Nov. 19, 2002). The district court determined that there was no evidence to show that the commissioner of public safety had exclusive control and possession of the video equipment. This is supported by the record as there is no evidence indicating who had control or possession of the video equipment. Furthermore, the appropriateness of a sanction or adverse inference pursuant to the spoliation doctrine is dependent on the prejudice the moving party suffered. Id. at 860. Here, the district court determined that Gray failed to show how the lack of video prejudiced him in any manner. This is also supported by the record as Gray did not testify, and there is nothing to indicate the video would show anything contrary to the deputy's testimony. We therefore determine that the spoliation doctrine is inapplicable, and the district court did not err when it determined Gray's right to due process was not violated because he did receive notice.
Gray was not entitled to a seven-day temporary-hardship license.
Gray contends that he was entitled to a seven-day temporary-hardship Minnesota driver's license, and the failure to provide him one violated his right to due process. We disagree.
At the time of the notice and revocation order, Gray had an Iowa driver's license, not a Minnesota driver's license or permit. Therefore, the revocation referred to his Minnesota driving privileges, not his driver's license. See Minn. Stat. § 169A.52, subd. 4 (stating the revocation refers to "the person's license or permit to drive, or nonresident operating privilege " (emphasis added) ). As a result, the notice stated that no temporary license was issued because Gray was not licensed in Minnesota. This differs from those with Minnesota driver's licenses, where upon providing an individual with a notice and order of revocation, the peace officer clips the upper corner of the driver's license, and then gives the individual a seven-day temporary *227 license. See Minn. Stat. § 169A.52, subd. 7. The purpose of the temporary license is clear: it functions as the driver's license after the permanent Minnesota driver's license is clipped. We note that Gray had no need for a temporary Minnesota license as he still had an active Iowa license and his Minnesota driving privileges would not be revoked for seven days.[9] Therefore, the "failure" of the state to provide Gray with a temporary hardship license did not violate his due-process rights.[10]
The notice and order of revocation did not contain any ambiguities creating a due-process violation.
Gray argues that his right to due process was violated because the notice and order of revocation was contradictory and misleading. He contends the notice was misleading because, on one hand, it stated no temporary license was issued because he is not licensed in Minnesota, but on the other hand, it stated revocation would begin in seven days. Essentially Gray is arguing that a reference to a license-revocation period is misleading if his license is not being revoked. But this is a misunderstanding of the license-revocation statute. For Gray, who has a license from another state, the revocation does not refer to a license, but instead to nonresident driving privileges. See Minn. Stat. § 169A.52, subd. 4 (stating that a "nonresident operating privilege" shall be revoked by the commissioner).[11] We therefore determine that Gray's contention does not constitute an ambiguity giving rise to procedural due-process concerns.
DECISION
While the Minnesota legislature has exercised its proper authority in limiting the scope of implied-consent hearings, we nonetheless determine petitioners may contend that their constitutional rights to procedural due process were violated. The important right to procedural due process-defined as fundamental fairness-must be afforded to petitioners during their judicial challenges to license revocations. And as a result, petitioners have the ability to argue they were not given this right. But because in this case Gray received notice, was not entitled to a temporary license, and did not receive an ambiguous notice, his procedural due-process rights were not violated. We affirm the district court's order declining to rescind the revocation.
Affirmed.

Gray did not testify at the implied-consent hearing.

Gray frames this argument as entitling him to a rescission of the revocation. We decline to address whether this would be the proper remedy if he did not receive adequate notice.

We note that there have been several examples of the Minnesota Supreme Court addressing procedural due-process arguments raised at implied-consent hearings. See e.g. , McDonnell v. Comm'r of Pub. Safety , 473 N.W.2d 848, 852 (Minn. 1991) (determining if misinformation in an implied-consent advisory violated appellant's due process); Johnson v. Comm'r of Pub. Safety , 911 N.W.2d 506, 508 (Minn. 2018) (same). However, these cases concerned an issue explicitly permitted at implied consent hearings-the accuracy of the implied-consent advisory. See Minn. Stat. § 169A.53, subd. 3(b)(6). The issue before this court is whether a procedural due-process argument, that is not expressly permitted, can be raised.

And if the notice is mailed, it is deemed received three days after mailing. Minn. Stat. § 169A.52, subd. 6 (2016).

The certification refers to the requirement that the peace officer had probable cause to believe the individual operated a motor vehicle while intoxicated.

Following the Axelberg case, the legislature added the necessity defense to the list of permissible issues. See Minn. Stat. § 169A.53, subd. 3(b)(11) (2016).

At oral arguments the state disputed whether it was proper to consider Gray's due-process arguments on the merits. However it was careful to not agree with the broad assertion that a due-process argument outside the confines of Minnesota Statutes section 169A.53, subdivision 3(b), could not be heard.

Gray also contends that regardless of whether he received the actual notice, and regardless of whether it was his fault that he left the notice behind, it was still the state's responsibility to re-deliver the notice to him before he was released from detox. We are not persuaded. Gray provides no legal authority holding that the state had any obligation to provide notice to him a second time.

Gray points to Minnesota Rule 7503.0900 to support his argument, which discusses the logistics and technicalities of the temporary license. This rule states that temporary licenses are as valid as original driver's licenses and it discusses the necessary information in a notice of revocation. But this rule is inapplicable to Gray as he was not issued a temporary license because his Iowa license was still valid, and his Minnesota driving privileges would not be revoked for another seven days.

We note the impracticability of Gray's argument. Despite having an active Iowa's driver's license, with Minnesota driving privileges intact for seven days, Gray argues he nonetheless should have been provided a seven-day hardship license from Minnesota. Gray fails to provide any legal authority that suggests Minnesota has the authority to issue driver's licenses to nonresidents licensed in other states.

Gray also argues the form is misleading because it stated no temporary license was issued because he is a nonresident, which he contends is contrary to Minnesota law. But this is reiteration of his prior argument that he was entitled to a temporary license. And as we discussed, Gray was not entitled to a temporary license.