# FLORENCE KMETZ AND ANOTHER v. GEORGE N. JOHNSON.

113 N. W. (2d) 96.

January 5, 1962—No. 38,162.

*Silver, Goff, Ryan, Wallace & Newcome,* for appellants.
*Miley, Narveson & Williams* and *David W. Nord,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying plaintiffs' motion to amend a special verdict, for judgment in their favor notwithstanding the special verdict, or for a new trial.

The action arises out of a collision between an automobile driven by defendant and a pedestrian, plaintiff Florence Kmetz, on April 19, 1958, between 8:30 and 9 p. m., on U. S. Highway No. 61 in the village of Wyoming, Minnesota. At the point of the accident, Highway No. 61 runs substantially north and south. It consists of a tarvia-surfaced road approximately 24 feet in width. On the east side, between the sidewalk and the traveled portion of the highway, at the point of the accident, there is a shoulder approximately 15 feet in width.

Plaintiffs' and defendant's versions of how the accident happened are completely in conflict. Florence Kmetz testified that she and her husband were in a hotel and store on the northeast corner of the intersection near which the accident occurred. She had a bottle of 7-Up and a "shorty," which consisted of an 8-ounce bottle of beer. They left the hotel by the west door of the building and proceeded to the crosswalk, intending to pass over the highway from east to west. She said that she and her husband stood on the shoulder, off the traveled portion of the highway about 3 or 4 feet, looked south and saw a car coming, and then looked north and saw a car approaching from that direc-

tion. At the time of the trial she testified that the lights of the south-bound car were not blinding to her and she said that, as she watched that car approaching, "all of a sudden I was gone." She testified that her husband held her left arm with his right hand and that she was 1 or 2 feet west of him. Plaintiff Michael Kmetz was not struck by the car. He corroborated her story. The testimony of both Mr. and Mrs. Kmetz was impeached in substantial matters by pretrial statements they had made.

A highway patrolman, Richard Webster, testified that during the early morning of the day after the accident, at the hospital, Mr. Kmetz told him that as they approached the highway, intending to cross from east to west, he had hold of his wife's arm to assist her down the sidewalk and curb and across the highway and that when they reached a point near the east edge of the traveled portion of the highway, and some distance north of the crosswalk, Mrs. Kmetz pulled away from him and started to run across the highway and was struck by defendant's car. He testified that he measured skid marks made by defendant's car and that they were on the northbound lane of the traveled portion of the highway.

In pretrial statements made by Mrs. Kmetz, she stated that the car coming from the north had blinding bright lights.

Defendant's version of the accident is that as he drove his car in a northerly direction on the northbound lane of the highway another car was approaching from the north with blinding lights and that he did not see Mrs. Kmetz until immediately before he struck her. He then saw her in front of the left side of his car. The only evidence of any impact shown on the car consisted of a dent on the left front near the cowl and two shiny spots on the left front bumper. After the impact, Mrs. Kmetz was found on the west or southbound lane of the highway. Defendant testified that Mrs. Kmetz was north of the crosswalk, standing in the road near the centerline at the time of the collision, and that Mr. Kmetz at that time was standing off the highway to the east.

The case was submitted to the jury on special verdicts. The jury found that defendant was not guilty of negligence with respect to lookout but was guilty of negligence with respect to failure to yield the right-of-way and that such negligence constituted a proximate cause of

the accident. It also found that Mrs. Kmetz was not guilty of negligence with respect to right-of-way but was guilty of negligence with respect to lookout and that such negligence was a proximate and contributing cause of the accident. As a result of these findings, it would follow that plaintiffs were not entitled to recover.

Plaintiffs assign as error failure of the court to submit to the jury questions relating to the negligence of defendant on account of the speed at which he was traveling and other errors with respect to the establishment of defendant's negligence. They also assign as error the ruling of the court excluding comment on defendant's failure to produce certain photographs which will be hereinafter discussed.

Implicit in the jury's verdict is a finding that Mrs. Kmetz was in the crosswalk so that she had the right-of-way but that she failed to exercise reasonable care in keeping a lookout for approaching traffic. Plaintiffs contend that, in view of the fact that the jury found that Mrs. Kmetz had the right-of-way, it must have accepted her version of how the accident happened and that, if it did, its finding that she failed to keep a proper lookout, which proximately contributed to the accident, is not supported by the evidence.

■ The fallacy of plaintiffs' reasoning is in assuming that the jury was required to accept in toto the testimony of either plaintiffs or defendant. The jury could accept as much of the testimony of either party as it believed to be true. The testimony of Mr. and Mrs. Kmetz was so far impeached by inconsistent pretrial statements that the jury could well and understandably reject much of it as untruthful. In Kundiger v. Prudential Ins. Co. 219 Minn. 25, 29, 17 N. W. (2d) 49, 52, we dealt with the question of whether a jury must accept all or none of the testimony of certain expert witnesses and said:

"* * * the jury was not required to accept or reject the testimony of each expert *in toto;* his testimony, *like that of any other witness, could be believed in part and disbelieved in part.*" (Italics supplied.)[1]

■ The physical facts with respect to the markings on the car showing the point of impact, if accepted by the jury, would make it im-

---

[1]See, also, McKenzie v. Siegel, 261 Minn. 299, 112 N. W. (2d) 353.

possible for the accident to have happened as plaintiffs claim it did. The only markings on the car, as testified to by the police officers and as shown by photographs, appeared on the left front bumper and left side of defendant's automobile. If the jury accepted that as the truth and was convinced that the left front portion of the car struck Mrs. Kmetz, it is understandable how it could reject much of plaintiffs' testimony. The position of Mr. and Mrs. Kmetz was such that the car could not have struck Mrs. Kmetz on its left front side and have missed her husband if they were standing on the shoulder of the highway, off the traveled portion, as they claim they were. A verdict cannot rest on evidence that is so contrary to established physical facts that it would have been impossible for the accident to have happened as claimed according to such evidence. Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372; Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448. The physical evidence, coupled with pretrial statements of Mr. and Mrs. Kmetz, furnish ample justification for rejection of much of their testimony by the jury.

■ Viewing the evidence in the light most favorable to the verdict, as we must on appeal, taking into consideration the location of the skid marks on the northbound traveled portion of the highway; the marks on the left front of the car; and defendant's testimony as to where he first saw Mrs. Kmetz and the location of her body after the accident, the jury had ample basis for a finding that Mrs. Kmetz was on the highway near the center. It could accept her testimony that she was in the crosswalk when she left the sidewalk and reject the balance of her testimony as unworthy of belief. Whether Mrs. Kmetz failed to keep a proper lookout for approaching automobiles at or immediately before the time of the collision presented a fact issue for the jury. We have held in many cases that even though a pedestrian, crossing a street in a crosswalk, has the right-of-way over approaching vehicles, he is not absolved from the duty of exercising reasonable care.[2]

---

[2]See, for instance, Liebrecht v. Crandall, 110 Minn. 454, 126 N. W. 69; Allen v. Johnson, 144 Minn. 333, 175 N. W. 545; Johnson v. Schuler, 152 Minn. 137, 188 N. W. 271; Lustik v. Walters, 169 Minn. 313, 211 N. W.

In Becklund v. Daniels, 230 Minn. 442, 445, 42 N. W. (2d) 8, 10, we said:

"The law is clear that plaintiff was not absolved from the duty of exercising ordinary care for his own safety merely because he was on the crosswalk and had the right of way. * * * A· pedestrian has a right to assume that a driver at an intersection will respect his right of way, but this cannot be turned into a rule which absolves a person from exercising the ordinary care of a prudent and reasonable man."

■ Under these circumstances, the question of plaintiff's contributory negligence clearly presented an issue for determination by the jury.[3]

■ With respect to determination of defendant's negligence, plaintiffs contend that it was error on the part of the court to fail to submit as a possible ground of negligence the speed at which defendant was traveling. It is conceded that the maximum speed limit in the village at the point of the accident was 30 miles per hour. Defendant testified that in his opinion he was traveling in the neighborhood of 35 miles per hour at the time he struck Mrs. Kmetz. However, the jury did find defendant guilty of negligence on the ground that he failed to yield the right-of-way to plaintiffs. As a result, plaintiffs' right to recover was established by the jury's finding of negligence unless it also found Mrs. Kmetz guilty of contributory negligence. While it clearly was error to fail to submit speed as a ground of negligence, it was harmless error in view of the fact that the jury did find defendant guilty of negligence. Plaintiffs' right to recover would be the same whether the jury found defendant guilty of negligence on one ground or on several.

The same is true with respect to other claimed errors relating to establishment of defendant's negligence. While there are errors in the case that would require a new trial if the verdict had been a general

---

311; Rimmer v. Cohen, 172 Minn. 134, 215 N. W. 198; Kinnonen v. Adolphson, 173 Minn. 138, 216 N. W. 605; Saunders v. Yellow Cab Corp. 182 Minn. 62, 233 N. W. 599; Heikkinen v. Cashen, 183 Minn. 146, 235 N. W. 879; Bolster v. Cooper, 188 Minn. 364, 247 N. W. 250.

[3]See, Bolster v. Cooper, *supra.*

one or if the jury had absolved defendant of negligence entirely, these errors become harmless when by a special verdict the jury actually has found defendant guilty of negligence on one ground that is unchallenged. The crucial issue in this case is whether the evidence sustains the jury's finding of contributory negligence. That issue has been resolved by the jury against plaintiffs.

■ The only other alleged error that merits any discussion relates to the court's refusal to permit plaintiffs' counsel to argue to the jury that defendant's failure to introduce photographs showing the location of skid marks on the highway would permit an inference unfavorable to defendant. At the trial, plaintiffs' counsel, upon examination of police officers and cross-examination of defendant, elicited statements that they had seen some photographs showing skid marks on the highway taken after the accident. He was informed by defendant that such photographs were in the possession of one of defendant's attorneys. No demand was made for their production, either at the trial or before the trial. It is apparent from the record that plaintiffs' counsel knew that such photographs were in existence, as well as the name of the photographer who took them.

It is plaintiffs' claim that these photographs would have been material in establishing defendant's negligence. They do not claim that the photographs would have been material on the issue of the contributory negligence of Mrs. Kmetz. If it was error to refuse to permit plaintiffs' counsel to comment on failure to produce these photographs, it was error without prejudice, inasmuch as the jury did find defendant guilty of negligence. At best, they would have been cumulative only in establishing other grounds of negligence that would have added nothing to plaintiffs' right of recovery.

The general rule that has prevailed in this state permitting an unfavorable inference to be drawn from failure to produce evidence in the possession and under the control of a party to litigation is well stated in Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 452, 74 N. W. 166, 170. There we upheld the following instruction of the court to the jury:

"If either party to this action has failed to adduce evidence within

its control which is reasonably calculated to throw light upon the conduct and responsibility of either party, such failure may be considered by the jury as tending to militate against the contention of such party with reference to the issue regarding which such evidence would have been pertinent."

In commenting on this instruction, we said:

"* * * The presumption, arising from the spoliation or suppression of evidence, that it would, if produced, be unfavorable to the party destroying or suppressing it, obtains with most force to the case of documentary evidence in the exclusive possession and control of the party. But the presumption is not necessarily limited to such cases. It is true that no unfavorable inference arises in ordinary cases from the mere failure to call as a witness one whom the other party had the same opportunity of calling or one whose testimony would be merely cumulative."[4]

Where the evidence is equally available to both parties, no unfavorable inference may be drawn from the failure of one to produce it. In Peterson v. Skarp, 117 Minn. 102, 104, 134 N. W. 503, 504, defendant claimed that plaintiff had failed to produce a stake which was involved in a collision with a launch in a lake and that therefore an unfavorable inference should be drawn against him. We said:

"* * * it was not shown that plaintiff had the stake in his possession or under his control, or that defendants could not have had it in court had they taken timely measures to that end."

Since the adoption of our rules of civil procedure, all parties to litigation have been afforded an opportunity under discovery procedures of ascertaining documentary evidence in the possession of his opponent. The unfavorable inference permitted from failure to produce evidence in the possession of and under the control of an opponent probably applies with less stringency today than it formerly did in view of the availability of procedure for obtaining it. Where opportunity is avail-

[4]See, also, Kulberg v. National Council, 124 Minn. 437, 145 N. W. 120; M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801; Vorlicky v. Metropolitan Life Ins. Co. 206 Minn. 34, 287 N. W. 109.

able to procure evidence adverse to an opponent and no effort is exerted to obtain it, the party failing to avail himself of existing opportunities should not be permitted to complain. The rule permitting an unfavorable inference to be drawn is bottomed on the belief that, if the evidence had been produced, it would have been unfavorable to the one having control over it. Exclusive control and possession are important. Where it can be obtained by a simple process of demanding it, the reason for the rule no longer exists. Here, no demand was made either at the time of trial or in pretrial examination. We think that it is time to say, with respect to documentary evidence, that some effort must be made by a party to obtain this type of evidence from an opponent before an unfavorable inference can be drawn against the opponent for failure to produce it.

There is also a difference to be noted in connection with the position of the parties at the trial. In this case, defendant called no witnesses of his own. All testimony relating to the alleged photographs was elicited by plaintiffs' counsel in the examination of their own witnesses or in the cross-examination of defendant. As we have said above, the photographs, if there were any, were material only in establishing defendant's negligence. In 2 Wigmore, Evidence (3 ed.) § 290, is pointed out the difference between permitting the unfavorable inference to be drawn against a party who does not have the burden of proof and permitting it against one who does. We find there the following statement:

"The opponent whose case is a denial of the other party's affirmation has no burden of *persuading the jury*. A party may legally sit inactive, and expect the proponent to prove his own case. Therefore, until the burden of producing evidence has shifted, the opponent has no call to bring forward any evidence at all, and may go to the jury trusting solely to the weakness of the first party's evidence. Hence, though he takes a risk in so doing, yet his failure to produce evidence cannot at this stage afford any inference as to his lack of it; otherwise the first party would virtually be evading his legitimate burden."

With respect to the requirement that a party ought to be required to at least demand production of the evidence by his opponent before he

can assert the right to claim an unfavorable inference from failure to produce it, Wigmore says (§ 291):

"If a failure to produce on one's own behalf is the fact offered, it is at least necessary * * * that the document be in the party's *power to produce;* and if a refusal to produce on behalf of the opponent is the fact relied upon, it is at least necessary that a *demand or notice* by the opponent should have been made, because otherwise it does not appear that the party was not willing to produce."

The last statement is particularly applicable in this case. Plaintiffs' counsel went only as far as to show that some of the witnesses had seen photographs showing skid marks on the highway and then dropped the matter. That he had knowledge of the existence of the photographs he now claims defendant should have produced is evident from his examination. The rule was never intended to be a strategic device to be used to the disadvantage of an opponent when the evidence was equally available to the party seeking to invoke the rule or when it could have been obtained by a simple demand. We see no error here in refusing to permit plaintiffs' counsel to comment on the failure to produce these photographs, if there were such.

Affirmed.

Mr. Justice Murphy took no part in the consideration or decision of this case.