**Wayne Alan BUTT, Appellant,**

v.

**Eleanor Anna SCHMIDT, Respondent.**

**No. A06–1015.**

Supreme Court of Minnesota.

April 17, 2008.

Mark A. Olson, Burnsville, for appellant.

Larry John Laver, Woodbury, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Appellant Wayne Alan Butt commenced this action for the dissolution of his marriage to respondent Eleanor Anna Schmidt. After the district court issued its final dissolution judgment and decree, Butt sought relief from the court of appeals, claiming that the district court erred when it 1) failed to apply Butt's child support calculation retroactively to the date the parties entered into a stipulation for joint custody; 2) declined to impute earned income to Schmidt when calculating child support; and 3) refused to treat Schmidt's spousal maintenance award as income when calculating child support. The court of appeals affirmed in part as to the issues of retroactive application of child support and imputation of earned income for purposes of child support. But the court reversed in part, remanding on the issue of treating Schmidt's spousal maintenance award as income for calculating child support. In its opinion, the court of appeals also indicated that the district court could modify its spousal maintenance award.

We granted review as to whether 1) the court of appeals erred when it gave the district court jurisdiction to modify spousal maintenance after the parties had waived the right to future modification of maintenance; 2) the district court erred by failing to impute income to Schmidt; and 3) the district court erred by failing to retroactively apply the final child support calculation to the date that the court ordered joint custody of the children. We affirm in part, reverse in part, and remand.

On December 23, 2003, appellant Wayne Alan Butt commenced this action to dissolve his marriage with respondent Eleanor Anna Schmidt. When the action was commenced, the parties had three minor children and one emancipated child. Both parties filed motions for temporary relief regarding, among other things, child custody, child support, and spousal maintenance. Based on the parties' motions and a hearing, the district court awarded the parties temporary joint legal custody and Schmidt temporary sole physical custody of the minor children. The court further ordered that, in light of Butt's income and Schmidt's unemployment, Butt pay Schmidt temporary child support in the amount of $2,358 per month and temporary spousal maintenance in the amount of $1,010 per month. The court stated that

the following issues would be reviewed de novo at trial: 1) Butt's income and withholding; 2) Schmidt's employment status; and 3) Butt's spousal maintenance obligation.

In November 2004, Butt filed a motion to eliminate his temporary spousal maintenance payments. The district court did not rule on this motion, so in May 2005, Butt filed a second motion to eliminate spousal maintenance. At the same time, Butt filed a demand for updated discovery responses. Schmidt opposed Butt's motion to eliminate maintenance, stating that she was unemployed and had no income apart from child support and spousal maintenance. Schmidt did indicate that she recently enrolled in school to pursue a health unit coordinator degree.

On May 27, 2005, Butt deposed Schmidt. In response to an inquiry about her past employment, Schmidt stated:

> In the past I've worked retail at Target, and I've done in-home daycare. I stayed home to raise my kids since they were all born, so I've done a lot of daycare. And then like I said, I've done Target, and I used to work at Sam's Club years ago when I was pregnant with my oldest boy, but once I had him, we decided that I would be the one to stay home and take care of the children.

Schmidt also said that after high school she obtained a cosmetology license but never pursued a career in that field because she and Butt moved to California shortly after they got married. Schmidt stated that she did not currently have a job or any earned income. She stated that her last job was as a para-professional substitute at a Woodbury junior high school. Further, Schmidt indicated that she had recently taken out a student loan to take an education course to become a health unit coordinator. Schmidt planned to take part-time evening classes in July

and said the course would last until September. When asked if she planned to work when she started school, Schmidt responded that "[e]ventually, yes, I want to get a job," but that she could not work at the time because she just had back surgery and was in a lot of pain. While Schmidt did not know the average salary of a health unit coordinator, she stated that a friend working in the field makes $13 per hour. According to the guardian ad litem's report, Schmidt completed her course work and at some point during the dissolution proceedings was working part-time as a health unit coordinator.

On January 7, 2005, the parties entered into a stipulation concerning parenting time. The stipulation was incorporated into a court order in May 2005. The order stated that the parties would share legal custody of their three minor children and set out a detailed parenting schedule upon which the parties had agreed. The order further stated that the parenting time stipulation "shall be effective immediately and shall be incorporated into the final judgment and decree entered in this matter." The stipulation did not address spousal maintenance or child support.

On August 3, 2005, the district court denied Butt's November 2004 and May 2005 motions to eliminate temporary spousal maintenance. The court stated:

> This matter is set for pre-trial on November 3, 2005, and a court trial on December 1, 2005. The Court does not intend to repeatedly readdress issues raised by the temporary hearing pending pre-trial and trial. The court will therefore deny the Petitioner's motion to terminate spousal maintenance.

The court also denied Butt's motion for updated discovery.

On December 27, 2005, the parties entered into a Marital Termination Agree-

ment where the parties stipulated to spousal maintenance. The agreement also incorporated the prior custody and parenting time stipulation. That same day, the district court issued a dissolution judgment and decree that incorporated the Marital Termination Agreement. The decree included the following findings: 1) Butt earns a gross monthly income of $8,839 and after allowable deductions, has a monthly net income of $5,633; 2) Butt earns a periodic bonus and received a bonus in the amount of $12,000 in 2004; and 3) Schmidt is not employed and has no retirement, 401k, or pension plan available to her.

The decree then set out the parties' stipulations, as agreed upon in the Marital Termination Agreement. First, it set out the terms of custody and parenting time to which the parties previously stipulated. The spousal maintenance section of the decree ordered Butt to pay Schmidt $1,000 per month in maintenance for 42 months. The decree also provided that except for the $1,000 per month, both parties waive any claim to maintenance. In support of this waiver the parties made the following affirmations:

a. Each party is fully capable of self-support and is not dependent upon the other for additional support in the form of spousal maintenance;

b. Each [party] has made a full, complete, and current disclosure of all income and assets available to him/her, and liabilities to which each is subject, so as to enable the other to adequately evaluate the reasonableness of this waiver;

c. Both parties agree that this waiver is fair and equitable, taking into account the foregoing factors, each party's respective personal circumstances and the property division agreed upon herein; and

d. The parties' agreement is supported by adequate consideration and was entered into after full financial disclosure to the other party.

The maintenance section concluded with the following language: "The Court is divested of jurisdiction over the issue of maintenance pursuant to *Karon v. Karon,* 435 N.W.2d 501 (Minn.1989)."

As to child support, the decree provided that "the parties [were] unable to agree on the basis (income) to be used or the percentage the children spend with each parent." Thus, the decree ordered that "[e]ach attorney * * * prepare and submit to the court their respective position concerning child support and the method of collection." The decree provided that the district court's decision regarding child support, once made, would be incorporated into the decree.

After the district court issued the decree, Butt submitted a letter to the court regarding the calculation of child support. Butt asserted that his net monthly income for child support purposes is $4,633–his $5,633 net monthly income minus his $1,000 monthly spousal maintenance obligation. He asserted that because the parties have joint legal and physical custody of the children and Schmidt has 72.6% of the parenting time with the children, his guideline child support obligation is $1,177 per month.

Butt also asserted that the child support calculation should be offset by income that should be imputed to Schmidt. More particularly, Butt asserted that Schmidt failed to provide the district court with sufficient information regarding her earned income despite Butt's repeated requests that she comply with his discovery requests. Therefore, according to Butt, when calculating Butt's child support obligations the court should conclude that Schmidt is voluntarily unemployed under Minn.Stat.

§ 518.551, subd. 5b(d), (e) (2004), and impute employment income to Schmidt in addition to the maintenance Butt pays to Schmidt.[1]

Schmidt submitted a written closing argument to the district court asserting that the child support award is a modification of the court's prior temporary support order. Thus, Schmidt asserted that under the child support modification statute, Minn.Stat. § 518.64, subd. 2 (2004), child support should not be altered from the temporary award because no changes had occurred that merited modification.

Butt responded by asserting that the issue is not the modification of child support because the prior child support order was temporary. Thus, Butt argued that the support calculation is not subject to the modification statute and was meant to be reviewed de novo by the district court at trial. Butt also reiterated that Schmidt had not presented any evidence to explain why she was not working and that the district court should impute income to Schmidt because she bears the burden of showing why she is unemployed.

In March 2006, the district court issued an order regarding child support. In the order, the court stated that while the parties submitted arguments as to child support, they "submitted minimal evidence to support their respective positions." The court then calculated Butt's net monthly income as $4,633 per month, considering his net employment income minus his maintenance payments. Consistent with Butt's proposed calculations, the court concluded that based on Butt's earned income, his child support obligation is $1,177 per month. But the court declined to impute income to Schmidt for child support purposes. Recognizing that Schmidt is currently unemployed, the court nevertheless concluded that "based upon the scant evidence provided to the Court, [it] cannot find that [Schmidt] is voluntarily unemployed or underemployed." Thus, the court ordered Butt to pay Schmidt the full $1,177 per month in child support.[2]

Butt appealed to the court of appeals, arguing that the district court erred when it 1) failed to apply Butt's child support obligations retroactively to the date the parties entered into a stipulation for joint custody; 2) declined to impute earned income to Schmidt when calculating Butt's child support obligations; and 3) refused to consider Schmidt's spousal maintenance award as income for the purpose of calculating child support obligations. *Butt v. Schmidt*, No. A06–1015, 2007 WL 2104366, at *1 (Minn.App. July 24, 2007). Schmidt did not submit a brief to the court of appeals.

The court of appeals, in an unpublished opinion, affirmed the district court on the issues of retroactive child support and imputation of earned income to Schmidt. *Id.* at *1–3. But the court of appeals held that the district court erred when it declined to consider Schmidt's maintenance award as income when determining child support. *Id.* at *3–4. Accordingly, the court of appeals remanded to the district court. *Id.* at *4. The court of appeals also

---

1. Based on section 518.551, subd. 5b(d), (e), Butt proposed three methods of calculating income to impute to Schmidt: 1) $13 per hour based on Schmidt's assertion in her deposition that her friend earns that wage as a health unit coordinator; 2) $11 per hour if the court wanted to give Schmidt "the benefit of the doubt of what she could be making" as a health unit coordinator; and 3) $9.38 per hour, which is 150% of minimum wage.

2. After the district court entered its final judgment, Butt petitioned the court to reconsider his request to offset his child support obligations with income the court should impute to Schmidt. The court declined to reconsider the child support issue.

stated that on remand, the district court has discretion to make any adjustments to spousal maintenance that it deems equitable. *Id.*

Butt now appeals to our court. Schmidt did not file a supreme court brief. Because Butt prevailed in his argument to the court of appeals that the district court should have treated Schmidt's maintenance award as income for purposes of child support calculations, Butt does not raise this issue on appeal. Butt has appealed the two remaining issues, asserting that the district court erred by failing to 1) impute income to Schmidt; and 2) retroactively apply the final child support calculation back to the date that the court ordered joint custody of the children. Butt also raises an additional claim in this appeal. Butt asserts that because both parties waived the right to future modification of spousal maintenance, the court of appeals erred when it stated that the district court, on remand, could modify the maintenance award.

## I.

We first address Butt's claim that the court of appeals erred when it gave the district court authority to modify spousal maintenance on remand. At the conclusion of its opinion, the court of appeals stated:

> On remand, the district court shall have discretion to make any adjustment to the maintenance award deemed necessary to achieve an equitable result in this case. If the district court believes that altering the support or maintenance award requires additional information, the district court shall have discretion to reopen the record.

*Butt,* 2007 WL 2104366, at *4. Butt asserts that in their Marital Termination Agreement, he and Schmidt both waived their rights to modify spousal maintenance. Because the district court incorporated this waiver agreement into the final decree, Butt argues that the waiver divested the district court of further jurisdiction over the issue of spousal maintenance and thus the court of appeals erred in authorizing the district court to modify maintenance.

In *Karon v. Karon,* the parties to a dissolution proceeding executed a stipulation that was incorporated into the final decree. 435 N.W.2d 501, 501 (Minn.1989). After setting out the terms of spousal maintenance, the parties' stipulation stated:

> Except for the aforesaid maintenance, each party waives and is forever barred from receiving any spousal maintenance whatsoever from one another, and this court is divested from having any jurisdiction whatsoever to award temporary or permanent spousal maintenance to either of the parties.

*Id.* at 502. One of the parties later attempted to modify the spousal maintenance under the modification statute— Minn. Stat. § 518.64 (2006). *Karon,* 435 N.W.2d at 502. The district court granted the motion to modify and the court of appeals affirmed. *Id.* at 502–03. But we reversed. *Id.* at 504. In *Karon,* we recognized that section 518.64 allows a court to modify a maintenance award upon petition of a party. *Id.* at 503. We concluded, however, that when a district court incorporates into its dissolution order a stipulation by the parties as to maintenance, the order is a final decree with a preclusive effect. *Id.* Thus, if the court's final decree includes such an express waiver precluding the right to any further maintenance, the court is divested of its jurisdiction over the maintenance issue because any later attempts to modify spousal maintenance are barred by issue preclusion. *Id.*

In 1989, the legislature added subdivision 5 to Minn.Stat. § 518.552. Act of

May 25, 1989, ch. 248, § 7, 1989 Minn. Laws 834, 838 (codified at Minn.Stat. § 518.552, subd. 5). Consistent with our decision in *Karon*, subdivision 5 states:

> The parties may expressly preclude or limit modification of maintenance through a stipulation, if the court makes specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party's financial circumstances has occurred. The stipulation must be made a part of the judgment and decree.

Minn.Stat. § 518.552, subd. 5 (2006). In *Loo v. Loo*, which we decided after the enactment of subdivision 5, we reiterated the validity of *Karon* waivers and recognized the new limitations subdivision 5 placed on such waivers. 520 N.W.2d 740, 746 n. 6 (Minn.1994). But in *Loo*, we also made clear that for such a waiver to divest the district court of jurisdiction over the issue of spousal maintenance, the stipulation must include both a "contractual waiver of [the parties'] statutory right to move for modification of maintenance prior to its termination" and "express language divesting the court of jurisdiction to consider motions for modification of spousal maintenance." *Id.* at 747; *see also Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996) (stating that section 518.551, subd. 5, requires that a waiver or limitation of maintenance be supported by consideration).

■ Four requirements must be met before a stipulation precluding or limiting maintenance modification divests the court of its jurisdiction over maintenance. These requirements are: 1) the stipulation must include a contractual waiver of the parties' rights to modify maintenance; 2) the stipulation must expressly divest the district court of jurisdiction over maintenance, *Loo*, 520 N.W.2d at 745–46; 3) the stipulation must be incorporated into the final judgment and decree; and 4) the court must make "specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party's financial circumstances has occurred," Minn.Stat. § 518.552, subd. 5.

Here, the Marital Termination Agreement and the decree included the following two statements, similar to those in *Karon*, which constitute a contractual waiver of the parties' rights to maintenance modification: 1) "[e]xcept for the award of $1,000 per month spousal maintenance for a period of forty-two months to [Schmidt], both parties waive any claim to spousal maintenance past, present and future;" and 2) "[i]t is the express intention of the parties that save for the award of 42 months of spousal maintenance to [Schmidt], neither party is awarded any spousal maintenance either past, present or future." The decree also explicitly stated that "[t]he Court is divested of jurisdiction over the issue of maintenance pursuant to *Karon v. Karon*, 435 N.W.2d 501 (Minn.1989)." Additionally, it is not disputed that the stipulation was incorporated into the court's final decree. Finally, affirmations concerning full and complete financial disclosure, the fairness of the waiver, and consideration were included in the Marital Termination Agreement to support the waiver. When these affirmations were accepted by the court and incorporated into the final decree, the court made the required findings under Minn.Stat. § 518.552, subd. 5. Because the four requirements of a maintenance waiver were met in this case, we conclude that the district court divested itself of jurisdiction over spousal maintenance. Therefore, we hold that the court of appeals erred when it authorized the district court to modify spousal maintenance on remand.

## II.

Butt next argues that the district court should have imputed income to Schmidt for purposes of calculating child support because Schmidt was voluntarily unemployed under Minn.Stat. § 518.551, subd. 5b(d), (e) (2004). Schmidt admitted that she was unemployed at the time of trial; however, Butt argues that subdivision 5b(d) places the burden on Schmidt to prove that her unemployment is not voluntary. Butt argues that because Schmidt failed to provide sufficient information to the court regarding her employability, the court was required to impute income to Schmidt.

The district court found Schmidt was unemployed but declined to impute income to her because it found that it had insufficient information regarding Schmidt's "attempts to secure employment, her employment history, education, and other appropriate factors." The court of appeals held that the district court did not abuse its discretion by failing to impute income to Schmidt. *Butt*, 2007 WL 2104366, at *3. While the court of appeals agreed that under Minn.Stat. § 518.551, subd 5b(d), the burden to prove Schmidt's employability was on her, the court concluded that Butt had "the initial burden of establishing that [Schmidt] is unemployed or underemployed." *Id.* The court concluded that because Butt failed to meet his initial burden, the burden of proof never shifted to Schmidt. *Id.* The court also rejected Butt's argument that there was sufficient evidence on the record to impute income to Schmidt. *Id.*

We have said that "[w]e will reverse a district court's order regarding child support only if we are convinced that the district court abused its broad discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record." *Putz v. Putz*, 645 N.W.2d 343, 347

(Minn.2002) (citing *Gully v. Gully*, 599 N.W.2d 814, 820 (Minn.1999), and *Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn. 1986)). But when we are interpreting a statute, the standard of review is de novo. *State v. Mauer*, 741 N.W.2d 107, 111 (Minn.2007).

Subdivision 5b(d) of Minn.Stat. § 518.551 describes what a court is required to do when a parent is found to be voluntarily unemployed or underemployed for the purposes of child support. The statute states:

> If the court finds that a parent is voluntarily unemployed or underemployed * * *, support shall be calculated based on a determination of imputed income. A parent is not considered voluntarily unemployed or underemployed upon a showing by the parent that the unemployment or underemployment: (1) is temporary and will ultimately lead to an increase in income; or (2) represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child. Imputed income means the estimated earning ability of a parent based on the parent's prior earnings history, education, and job skills, and on availability of jobs within the community for an individual with the parent's qualifications.

Minn.Stat. § 518.551, subd. 5b(d).

As an initial matter, the district court declined to impute income to Schmidt under subdivision 5b(d) because it concluded that there was insufficient information in the record to determine whether Schmidt was voluntarily unemployed. But in its order for temporary relief, the court found that Schmidt was unemployed and had no significant work history but was "capable of finding suitable employment to become partially self-supporting." In the final decree, the court incorporated the Marital Termination Agreement that included the

parties' affirmations that "[e]ach party is fully capable of self-support and is not dependent on the other for additional support in the form of spousal maintenance." Based on these findings, it appears that the court did conclude, and the parties agreed, that Schmidt was capable of finding and holding employment.

Further, while Schmidt provided minimal evidence to the district court about her income and employability, Butt and the guardian ad litem provided significant evidence about Schmidt's employment, education, and earnings history. There was evidence that Schmidt was working at different times during the dissolution proceeding and that she had recently earned a health unit coordinator degree and at some point during the dissolution proceedings had used the degree to obtain employment. The record also includes some information about Schmidt's work history. Based on the record, we question whether the court properly concluded that it had insufficient information to determine whether Schmidt was voluntarily unemployed.

Nevertheless, because the district court failed to make a finding regarding whether Schmidt was voluntarily unemployed, the question before us on appeal is whether the court's believed lack of information was a proper basis for it to decline to impute income to Schmidt. While the language of subdivision 5b(d) indicates that a parent has the burden of proving that her voluntary unemployment or underemployment is justified, it does not indicate which party has the initial burden of proving the parent in question is voluntarily unemployed or underemployed. Instead, the section simply states that if "*the court finds* the parent is voluntarily unemployed or underemployed" then the court "shall" impute income to that parent. Minn.Stat. § 518.551, subd. 5b(d) (emphasis added).

Two other paragraphs within subdivision 5b, however, shed some light on who bears the burden to prove that a party is voluntarily unemployed or underemployed. First, paragraph (a) requires that each party to a dissolution proceeding "timely serve and file documentation of earnings and income," including federal tax returns and pay stubs for at least the prior 3 months. The language of paragraph (a) explicitly places the burden on each party to produce his or her own income information.

Second, paragraph (e) provides that "[i]f there is insufficient information *to determine actual income or to impute income pursuant to paragraph (d)*, the court may calculate support based on full-time employment of 40 hours per week at 150% of [minimum wage]." (emphasis added). In essence, paragraph (e) provides a mechanism for the district court to calculate how much income to attribute to a party if the court lacks enough information to determine that spouse's actual income or to impute income to that spouse as outlined in paragraph (d). The latter part of paragraph (e), states "it shall be presumed that the parent is *not* voluntarily unemployed or underemployed" if that party receives public assistance or is mentally or physically incapacitated. Minn.Stat. § 518.551, subd. 5b(e) (emphasis added). Absent such evidence, or other evidence provided *by the party* to show his or her income or a valid reason why the party has no income, it appears that the statute directs the court to presume that each party is capable of full-time employment, which pays at least 150% of the minimum wage. Minn. Stat. § 518.551, subd. 5b(e).

■ Considering paragraphs (a), (d), and (e) together, we conclude that Butt is correct in asserting that because Schmidt failed to provide sufficient income information to the district court, the court was

required to calculate Schmidt's income based on paragraph (e). Paragraph (a) explicitly places the burden on each party to produce his or her own income information and if a party does so, that information becomes the basis for the court's findings. Under paragraph (d), the court *imputes* income to a party based on the party's prior earnings, education, and job skills if the court finds that the party is voluntarily unemployed or underemployed. But if the court cannot determine actual income or impute income because it lacks sufficient information, paragraph (e) directs the court to calculate income for purposes of child support based on 150% minimum wage. Further, paragraph (e) carves out an exception for when the court should not presume that a party is voluntarily unemployed or underemployed. Given the language of paragraphs (a), (d), and (e), we conclude that paragraph (e), in directing the court to calculate a party's income at 150% of the minimum wage when the court lacks sufficient information "to [otherwise] determine actual income or to impute income," implicitly requires the court to presume that a party who has not provided the court with sufficient income information is voluntarily unemployed or underemployed and to attribute income to that party.

Our interpretation of subdivision 5b is consistent with our procedural principles. For example, we have held that a party in exclusive possession of evidence has the burden to produce that evidence. *See Kmetz v. Johnson,* 261 Minn. 395, 401–03, 113 N.W.2d 96, 100–01 (1962). In a marital dissolution proceeding, each spouse is in the better position to produce his or her own work history, education background, and earnings history. Indeed, one spouse's knowledge of the other's income, education, and work history is likely to be incomplete. Moreover, we have stated that if a party is in exclusive possession of evidence and that party fails to produce the evidence, an unfavorable inference may be drawn about that party as to the relevant issue. *Kmetz,* 261 Minn. at 401–02, 113 N.W.2d at 100–01.[3] These procedural principles are furthered by interpreting Minn.Stat. § 518.551, subd. 5b, as requiring the district court to attribute income to a party when that party has failed to provide the required income information under paragraph (a). This interpretation also provides incentives for parties in a dissolution proceeding to comply with discovery rules and to report income and employment information accurately, which is particularly important when the support of children is at stake.

In this case, the district court declined to impute income to Schmidt because it found that there was insufficient information regarding Schmidt's "attempts to secure employment, her employment history, education, and other appropriate factors." If we accept the court's belief that it lacked sufficient information concerning Schmidt's income, it should have attributed income to Schmidt, based on evidence of Schmidt's education and work history or at 150% of the minimum wage under Minn. Stat. § 518.551, subd. 5b(d), (e). This is particularly true in this case because during the proceedings, Butt made multiple attempts to compel Schmidt to produce evidence regarding her employment. Butt

---

3. While this court has made clear that because of the discovery tools in place, a party cannot request that an adverse inference be drawn if the party fails to attempt to obtain the evidence, *Kmetz,* 261 Minn. at 401–02, 113 N.W.2d at 100–01, here it appears that Butt did in fact make attempts to compel Schmidt to produce evidence regarding her employment but the court denied his motions to compel discovery. Additionally, Butt attempted to provide the court with information regarding Schmidt's employment history.

first requested that the court compel Schmidt to answer Butt's interrogatories, which Schmidt eventually answered, albeit incompletely.[4] According to the record, Schmidt submitted no further information or documentation regarding her employment after she answered the interrogatories. Nor did she provide any information or evidence to the court that she was unemployed because she was the primary caretaker of the minor children, or because she was physically incapable of working. At least two more times, Butt requested that the court compel Schmidt to comply with his discovery requests, but the court denied his motions.

Additionally, Butt attempted to provide the district court with sufficient information regarding Schmidt's employment history. In his affidavit supporting his motion for temporary relief, Butt listed what he knew of Schmidt's employment history. He also asked Schmidt about her employment history and education at her deposition, which included extensive questioning about Schmidt's medical problems and drug abuse history. Despite Butt's attempts to provide the court with information about Schmidt's income and employment, the court concluded that it lacked sufficient information regarding Schmidt's employability. Given this finding, the court should have attributed income of at least 150% of the minimum wage to Schmidt based on Minn.Stat. § 518.551,

subd. 5b(e), because it was Schmidt's burden under subdivision 5b(a) to provide that information.

■ Because we conclude that the district court failed to follow the proper procedures regarding Schmidt's income, we hold that the court abused its discretion in not attributing income to Schmidt for purposes of computing child support. We therefore remand to the district court the issue of imputing income to Schmidt under Minn.Stat. § 518.551, subd. 5b. Because it may not have been clear to the parties that Schmidt bore the burden to provide her income information to the district court, on remand the district court may, at its discretion, give Schmidt the opportunity to provide income information. But we emphasize that if the court finds it lacks sufficient information about Schmidt's income, work history, education, and reasons for being unemployed that may excuse her from a finding that she is voluntarily unemployed under Minn.Stat. § 518.551, subd. 5b(d),[5] the court should impute income to Schmidt based on subdivision 5b(d) and (e).

### III.

■ Butt's final argument concerns the district court's failure to apply his child support obligation retroactively. In August 2004, the court ordered Butt to pay temporary child support in the amount of $2,358 per month based on Minn.Stat.

---

4. Schmidt's answers regarding income, employment, and education were as follows. In response to a request for her work history, Schmidt stated that she attached a resume to her answers. No resume could be found in the appellate file. Schmidt also stated that she is not currently working because of medical problems. In response to an interrogatory concerning Schmidt's educational background, she again referred to her resume.

5. We note that under Minn.Stat. § 518.551, subd. 5b(e), a parent is not voluntarily unem-

ployed or underemployed if that parent is physically or mentally incapacitated. Further, if a parent has been a homemaker or the primary caretaker of the children during the marriage and is working the same hours at the time of dissolution that the parent worked throughout the marriage, courts should recognize the diminished earning capacity of such a parent and should not consider the parent voluntarily unemployed or underemployed when there is no evidence that the parent is purposely reducing income.

§ 518.551 (2004). This award was based on Schmidt's unemployed status, Butt's income, and the court awarding Schmidt temporary sole physical custody of the minor children. In January 2005, the parties stipulated to a parenting plan that gave the parties joint physical and legal custody of the children and divided parenting time—27.4% to Butt and 72.6% to Schmidt. Based on the stipulated custody and parenting time schedule and new evidence regarding Butt's income, the court ordered that Butt pay $1,177 per month in permanent child support.

Butt argues that the district court erred when it failed to compute permanent child support "dating back to the joint [custody] arrangement" agreed upon by the parties in January 2005. Although the basis of Butt's argument is not clear, he asserts that the court intended to review Butt's child support obligations de novo at trial because in its temporary order, the court stated that it would review the issues of Butt's income and Schmidt's employment status de novo at trial. Butt further argues that a de novo review means that when the court calculated Butt's permanent child support obligation at trial, it should have retroactively applied that calculation to the time that the parties agreed to joint custody.

The court of appeals held that Butt waived this issue because he failed to raise it in the district court. *Butt v. Schmidt*, 2007 WL 2104366, at *1 (Minn.App. July 24, 2007). The court of appeals then held that even if it was not waived, the district court did not abuse its discretion because at the time the custody agreement was entered into, the temporary child support order was in effect and Butt did not move to modify that order at any time before the entry of the final decree. *Id.*

We have stated that "a reviewing court must limit itself to a consideration of only those issues which the record shows were, or had to be, presented and considered by the trial court in deciding the matter before it." *Thompson v. Barnes*, 294 Minn. 528, 536, 200 N.W.2d 921, 927 (1972); *see also Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). As the court of appeals observed, Butt did not object to the temporary child support order at any time after it was issued. While Butt claims that he did, in fact, move to modify temporary child support, the record indicates that in the motions to which Butt refers, he moved only to modify temporary spousal maintenance and made no mention of his child support obligations. Moreover, Butt did not make an argument to the district court that the permanent child support order should apply retroactively. Even when Butt petitioned the district court for reconsideration of the permanent child support award, arguing that the court should have imputed income to Schmidt, Butt failed to raise his retroactive application argument. Because Butt failed to raise the issue of retroactive child support, whether temporary or permanent, at any time during his dissolution proceedings, we hold that the court of appeals was correct in holding that Butt waived this claim.

■ Nevertheless, even if Butt had not waived the issue of retroactive child support, we agree with the court of appeals' analysis that the claim lacks merit. As stated above, we will reverse a child support order only if we conclude "that the district court abused its discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record." *Putz*, 645 N.W.2d at 347. At the time of the final decree, Minn.Stat. § 518.551 (2004) governed permanent child support orders. This section does not provide that the district court, when issuing a

final child support order, can make the order retroactive.[6]

While Minn.Stat. § 518.551 does not provide for retroactive child support orders, Minn.Stat. § 518.64 (2004) provides that the district court can make retroactive a *modification* of a child support order, whether the order is temporary or permanent. Here, the initial custody order was a *temporary* custody order, which is governed by Minn.Stat. § 518.131 (2004). Section 518.131, subd. 1(c), permits a court to grant a temporary child support order "pending the final disposition of the proceeding." Temporary child support orders can be modified in the same manner as permanent support orders, *see* Minn.Stat. § 518.64, but a temporary child support order only continues "in full force and effect until the earlier of its amendment or vacation, dismissal of the main action or entry of a final decree of dissolution or legal separation," Minn.Stat. § 518.131, subd. 5 (2004). Thus, Butt could have moved to amend or vacate the temporary order anytime before the court entered its final decree, and if he had done so, the modification statute would have allowed for retroactive application. But Minn.Stat. § 518.64, subd. 2(d) (2004), limits the period of retroactive application. More particularly, a modification of child support can be made retroactive "only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party." *Id.*

█ Butt made no motions to modify child support at any time before the final decree was issued. Moreover, the child support ordered in the final decree was a permanent order issued under section 518.551. Thus, the final decree was not a *modification* of the temporary order; temporary orders and permanent orders are distinct and governed by different statutes. Once the final decree was issued, the temporary order was no longer in effect, Minn. Stat. § 518.131, subd. 5, so the court could no longer modify the temporary order. Because a permanent child support order cannot be applied retroactively and is not a modification of a temporary order, and because Butt failed to move to modify his temporary child support obligation at any time before the final decree was issued, we conclude that even if Butt did not waive his retroactive child support claim, the claim has no merit. We therefore hold that the district court did not err when it failed to apply Butt's child support obligation retroactively to the time that he and Schmidt agreed to joint physical custody of their minor children.

Affirmed in part, reversed in part, and remanded.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

**6.** Butt's claim that a de novo review of child support at trial requires retroactive application of the child support order also lacks merit. *Black's Law Dictionary* defines *"appeal de novo"*, also termed *"de novo review"* as "[a]n appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's ruling." *Black's Law Dictionary,* 106 (8th ed.2004). There is no language in this definition that indicates a *de novo* review requires a *retroactive* application of an order, only a clean slate upon which the new order will be granted.