In re the MARRIAGE OF Melissa Lynn GOSSMAN, petitioner, Respondent,

v.

Jonathan Douglas GOSSMAN, Appellant.

No. A13–1095.

Court of Appeals of Minnesota.

June 2, 2014.

Linda S.S. de Beer, de Beer & Associates, P.A., Lake Elmo, MN, for respondent.

Kevin S. Sandstrom, Mark J. Vierling, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, MN, for appellant.

Considered and decided by RODENBERG, Presiding Judge; JOHNSON, Judge; and RANDALL, Judge.

## OPINION

JOHNSON, Judge.

Upon the dissolution of their marriage, Jonathan Douglas Gossman and Melissa Lynn Gossman agreed that he would pay her $5,000 per month in spousal maintenance for a period of five years and that the district court would be divested of jurisdiction to modify the maintenance award. Their agreement was incorporated into a final judgment and decree. But the parties subsequently agreed to modify the maintenance award and twice induced the district court to issue orders that purported to modify the maintenance award. Ms. Gossman later moved to vacate the modification orders and to enforce the original maintenance award. The district court granted her motion to vacate the modification orders but denied her motion to enforce the original maintenance award. We conclude that the district court did not err by determining that the modification orders are void and by vacating the modification orders. We conclude, however, that the district court erred by not fully enforcing the original maintenance award. Therefore, we affirm in part, reverse in part, and remand.

## FACTS

Mr. Gossman and Ms. Gossman divorced in 2010 after approximately ten years of marriage. At the time, Mr. Gossman was 33 years old, and Ms. Gossman was 31 years old.

In May 2010, Mr. and Ms. Gossman entered into a marital-termination agreement in which Mr. Gossman agreed to pay Ms. Gossman $5,000 per month in temporary spousal maintenance for five years, from June 2010 until June 2015. Ms. Gossman was represented by an attorney; Mr. Gossman was unrepresented. The marital-termination agreement includes the following provision, which is commonly known as a *Karon* waiver:

> Except as provided above, neither party is awarded spousal maintenance (alimony) from the other either past, present or future, and that the same is hereby forever waived. The Court is divested of jurisdiction to modify the maintenance provisions herein.

In July 2010, the district court accepted the agreement and incorporated it into a final judgment and decree. With respect to the *Karon* waiver, the district court made the following findings:

> The written Agreement fully discloses the financial situation of the parties and adequately describes the consideration, including property settlement and waiver of spousal maintenance. The Agreement is fair and equitable and supported by adequate consideration and is specifically adopted by the Court.

Notwithstanding their agreement to finally resolve the issue of spousal maintenance, the parties subsequently entered into three agreements to modify the maintenance award. First, in December 2010, only five months after the dissolution and decree, the parties agreed to reduce Mr. Gossman's maintenance obligation to $3,400 per month. The parties personally executed a document captioned "Stipulation and Order Amending Judgment and Decree," which a district court judge signed and filed. The operative language states, "Paragraph 2 of the Conclusions of Law contained in the Judgment and De-cree dated July 23, 2010 is hereby amended to provide that effective November 1, 2010, [Mr. Gossman] shall pay to [Ms. Gossman] the sum of $3,400 per month as and for temporary spousal maintenance for the term set forth in the original paragraph." The stipulated order appears to have been prepared by a legal professional, though it states that neither party is represented by counsel.

Second, in August 2011, the parties agreed to further reduce Mr. Gossman's monthly spousal-maintenance obligation to $2,400 per month. This agreement was reduced to writing in a stipulated order, but the stipulated order never was submitted to the district court, apparently due to inadvertence.

Third, in December 2011, the parties again agreed to further reduce Mr. Gossman's monthly spousal maintenance obligation to $1,360 per month for the months of December 2011 to June 2012, and to $1,160 per month for the remainder of the five-year term. The parties again personally executed a document captioned "Stipulation and Order Amending Judgment and Decree," and a district court judge again signed and filed the order. This stipulated order is similar in appearance and format to the first stipulated order.

In July 2012, Ms. Gossman moved to vacate the 2010 and 2011 orders on the ground that they are void because the original judgment and decree contained a valid *Karon* waiver, which deprived the district court of jurisdiction to modify the original maintenance award. *See* Minn. Stat. § 518.145, subd. 2(4) (2012). She asked the district court to reinstate the original maintenance award of $5,000 per month and to order Mr. Gossman to pay $59,170 in unpaid maintenance, which reflected the difference between the monthly payments required by the original mainte-

nance award and the payments he actually had made.

In October 2012, the district court granted the motion in part and denied it in part. The district court reasoned that it lacked jurisdiction to enter the two orders modifying spousal maintenance because the original judgment and decree contained a valid *Karon* waiver. Accordingly, the district court vacated the 2010 and 2011 modification orders on the ground that the orders are "null and void" and reinstated the original maintenance award of $5,000 per month, effective June 26, 2012. But the district court did not order Mr. Gossman to pay $59,170 in unpaid spousal maintenance, for the following reasons:

> Both parties had believed in good faith that they had changed the amount of spousal maintenance with the stipulations submitted and signed by the Court. The evidence indicates that the parties relied upon the stipulations. Therefore, the Court finds that an order requiring Respondent to pay the $59,179.00 sought by Petitioner for unpaid spousal maintenance would not be fair or equitable. The amount of spousal maintenance laid out in the Judgment and Decree of $5,000.00 per month shall resume on [June] 26, 2012.

Ms. Gossman later moved to amend the district court's findings with respect to her request for an order requiring Mr. Gossman to pay the arrearages, but the district court denied the motion.

Notwithstanding the district court's October 2012 order, Mr. Gossman continued to pay Ms. Gossman reduced amounts of maintenance, consistent with the terms of the 2011 modification order. In January 2013, Ms. Gossman moved to enforce the October 2012 order by requesting a judgment for the difference between the amounts required by the original mainte-

nance award and the amounts Mr. Gossman actually had paid between June 2012 and January 2013, plus interest. In April 2013, the district court granted this motion.

Mr. Gossman filed a notice of appeal, and Ms. Gossman filed a notice of related appeal. Mr. Gossman challenges the district court's vacatur of the 2010 and 2011 modification orders. Ms. Gossman challenges the district court's denial of her motion to enforce the original maintenance award for the period of time between December 2010 and June 2012.

## ISSUES

I. If a district court order purports to modify an award of spousal maintenance, notwithstanding a valid *Karon* waiver that deprived the district court of jurisdiction to modify the maintenance award, is the district court order void?

II. If a district court order that purports to modify an award of spousal maintenance is void because a valid *Karon* waiver deprived the district court of jurisdiction to modify the maintenance award, must the district court enforce the original maintenance award?

## ANALYSIS

As a general rule, this court applies an abuse-of-discretion standard of review to a district court's ruling concerning spousal maintenance. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). But we apply a *de novo* standard of review to issues of jurisdiction and statutory interpretation, which are questions of law. *Grachek v. Grachek,* 750 N.W.2d 328, 331 (Minn.App. 2008), *review denied* (Minn. Aug. 19, 2008). In this case, the parties' arguments raise questions of law that are subject to a *de novo* standard of review. *See id.*

## I.

Mr. Gossman argues that the district court erred by vacating the 2010 and 2011 modification orders.

## A.

If a district court awards spousal maintenance in a dissolution proceeding, either party generally has a right to seek a modification of the spousal maintenance award at a later date:

> After an order under this chapter or chapter 518 for maintenance or support money, temporary or permanent, ... the court may from time to time, on motion of either of the parties, ... modify the order respecting the amount of maintenance or support money, and the payment of it ... and may make an order respecting these matters which it might have made in the original proceeding, except as herein otherwise provided.

Minn.Stat. § 518A.39, subd. 1 (2012). Notwithstanding the right to seek a modification of a maintenance award, parties to a dissolution proceeding may, at the time of the initial decree, agree to waive or limit their rights to seek a modification of a maintenance award. *Butt v. Schmidt*, 747 N.W.2d 566, 573 (Minn.2008); *Loo v. Loo,* 520 N.W.2d 740, 744–45 (Minn.1994); *Karon v. Karon,* 435 N.W.2d 501, 503 (Minn. 1989), *superseded in part by statute,* 1989 Minn. Laws ch. 248, § 7, at 838 (codified at Minn.Stat. § 518.552, subd. 5), *as recognized in Loo,* 520 N.W.2d at 746 n. 6. If parties waive their rights to modification in a proper way, "the courts are without authority to award [a modification] in the future." *Karon,* 435 N.W.2d at 503; *see also Butt,* 747 N.W.2d at 573; *Loo,* 520 N.W.2d at 745. This type of waiver is commonly known as a *"Karon* waiver." *See, e.g., Butt,* 747 N.W.2d at 573.

For purposes of this appeal, it is useful to review the origins and rationale of the *Karon* waiver. In *Karon,* the parties entered into an agreement that was incorporated into a final decree. 435 N.W.2d at 501. The decree provided that Mr. Karon would pay Ms. Karon $1,200 per month for six years and $600 per month for four years thereafter. *Id.* at 502. The decree also included the following provision, which was part of the parties' agreement:

> Except for the aforesaid maintenance, each party waives and is forever barred from receiving any spousal maintenance whatsoever from one another, and this court is divested from having any jurisdiction whatsoever to award temporary or permanent spousal maintenance to either of the parties.

*Id.* Approximately four years later, Ms. Karon moved to modify the maintenance award by requesting permanent maintenance of $3,500 per month. *Id.* She based her motion on an alleged substantial change in circumstances arising from the fact that Mr. Karon's income had increased while her income had decreased. *Id.* The district court granted the motion to modify, and this court affirmed. *Id.* at 502–03. The supreme court defined the key issue as "whether the district court properly divested itself of jurisdiction over the issue" in its original decree. *Id.* at 503. The supreme court answered that question in the affirmative, reasoning that the district court's adoption of the stipulated agreement caused the agreement to merge into the final judgment and decree, which gave the stipulated agreement preclusive effect. *Id.* The supreme court further reasoned that the parties' waiver of their respective rights to seek modification of the maintenance award, once incorporated into the final judgment and decree, divested the district court of jurisdiction to consider any subsequent motion to modify the maintenance award:

It is not the parties to the stipulation who have divested the court of ability to relitigate the issue of maintenance. The court had the authority to refuse to accept the terms of the stipulation in part or *in toto*. The trial court stands in place and on behalf of the citizens of the state as a third party to dissolution actions. It has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all. The court did so here and approved the stipulation and incorporated the terms therein in its decree. Thus, the decree is final absent fraud.

*Id.*

In 1989, the legislature amended the relevant statute in a way that recognized the *Karon* opinion and added certain requirements. *See* 1989 Minn. Laws ch. 248, § 7, at 838. The legislature did so by enacting the following provision:

The parties may expressly preclude or limit modification of maintenance through a stipulation, if the court makes specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party's financial circumstances has occurred. The stipulation must be made a part of the judgment and decree.

Minn.Stat. § 518.552, subd. 5 (2012).

The supreme court subsequently reiterated its approval of *Karon* waivers and recognized the additional requirements of subdivision 5. In *Loo,* the supreme court held that a *Karon* waiver divests a district court of jurisdiction to modify a maintenance award if the parties' agreement includes both (1) a "contractual waiver of the statutory right to move for modification of maintenance" prior to its termination and (2) "express language divesting the court of jurisdiction to consider motions for mod-

ification of spousal maintenance." 520 N.W.2d at 746. Most recently, in *Butt,* the supreme court synthesized its prior caselaw and the 1989 legislation by identifying four requirements that "must be met before a stipulation precluding or limiting maintenance modification divests the court of its jurisdiction over maintenance":

1) the stipulation must include a contractual waiver of the parties' rights to modify maintenance; 2) the stipulation must expressly divest the district court of jurisdiction over maintenance, *Loo,* 520 N.W.2d at 745–46; 3) the stipulation must be incorporated into the final judgment and decree; and 4) the court must make "specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party's financial circumstances has occurred," Minn.Stat. § 518.552, subd. 5.

747 N.W.2d at 573. Because the *Karon* waiver in *Butt* satisfied all four requirements, the supreme court held that the district court was divested of jurisdiction over the issue of maintenance and that this court erred by authorizing the district court to modify the original maintenance award on remand. *Id.*

**B.**

■ In this case, Mr. Gossman does not challenge the premise that the parties agreed to a valid *Karon* waiver. Rather, Mr. Gossman challenges the notion that he and his former wife are precluded from entering into a subsequent agreement to allow the district court to modify the original maintenance award. He contends that the agreement to a *Karon* waiver may be modified by mutual agreement in the same manner as any other agreement. He further contends that the existing caselaw concerning *Karon* waivers does not preclude a district court from ordering a mu-

tually agreed-upon modification because the existing caselaw arises exclusively from modification motions in which one party opposed modification.

Mr. Gossman is correct that neither the supreme court nor this court has considered the effect of a valid *Karon* waiver in the particular procedural posture of this case. Nonetheless, the existing caselaw contains clear statements of law concerning the effect of a valid *Karon* waiver, which compels this court to reject Mr. Gossman's argument.

In *Butt*, the supreme court explained the interplay between the statutory right to seek a modification of a maintenance award and a judgment and decree that contains a valid *Karon* waiver:

> In *Karon*, we recognized that section 518.64 allows a court to modify a maintenance award upon petition of a party. We concluded, however, that when a district court incorporates into its dissolution order a stipulation by the parties as to maintenance, *the order is a final decree with a preclusive effect.* Thus, if the court's final decree includes such an express waiver precluding the right to any further maintenance, *the court is divested of its jurisdiction over the maintenance issue because any later at-*tempts *to modify spousal maintenance are barred by issue preclusion.*

747 N.W.2d at 572 (emphasis added) (citations omitted). This discussion reveals that a *Karon* waiver is a matter of jurisdiction,[1] not a matter of contract. A valid *Karon* waiver that is incorporated into a final judgment and decree no longer is simply an agreement between the parties. After a district court issues a final judgment and decree that divests the district court of jurisdiction over the issue of maintenance, that issue is not subject to modification merely because the parties subsequently enter into another agreement that seeks to modify the original maintenance award. Both before and after *Karon*, the supreme court has stated that parties may not confer jurisdiction upon a district court by stipulation or agreement. *See Seehus v. Bor–Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn.2010); *Tischer v. Housing & Redevelopment Auth. of Cambridge*, 693 N.W.2d 426, 430 (Minn.2005); *Hemmesch v. Molitor*, 328 N.W.2d 445, 447 (Minn. 1983); *No Power Line, Inc. v. Minnesota Envtl. Quality Council*, 262 N.W.2d 312, 321 (Minn.1977); *Davidner v. Davidner*, 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975); *Huhn v. Foley Bros.*, 221 Minn. 279, 286,

---

1. The United States Supreme Court and the Minnesota Supreme Court have noted that the word "jurisdiction" sometimes is used imprecisely to refer to non-jurisdictional claims-processing rules or non-jurisdictional limits on a court's authority to address an issue. *E.g.*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235, 1245, 163 L.Ed.2d 1097 (2006) (holding that threshold number of employees for application of Title VII is element of plaintiff's claim for relief, not jurisdictional issue); *Eberhart v. United States*, 546 U.S. 12, 19–20, 126 S.Ct. 403, 407, 163 L.Ed.2d 14 (2005) (holding that time limit for new-trial motion is claims-processing rule); *Rubey v. Vannett*, 714 N.W.2d 417, 421–22 (Minn. 2006) (holding that time limit for post-trial motions is non-jurisdictional procedural rule); *In re Civil Commitment of Giem*, 742 N.W.2d 422, 426–30 (Minn.2007) (holding that failure to meet statutory deadlines in commitment proceeding did not divest district court of jurisdiction). The *Butt* opinion, which was issued after *Arbaugh*, *Eberhart*, *Rubey*, and *Giem*, described *Karon* waivers as "jurisdictional." *Butt*, 747 N.W.2d at 573. This opinion describes a district court's lack of authority to modify spousal maintenance after a valid *Karon* waiver in the same manner. Regardless of terminology, it remains true that a district court may not modify a maintenance award if parties have entered into a valid *Karon* waiver. *See Moore v. Moore*, 734 N.W.2d 285, 287 n. 1 (Minn.App.2007), *review denied* (Minn. Sept. 18, 2007).

22 N.W.2d 3, 8 (1946). The *Karon* line of cases is consistent with this concept. Mr. Gossman has not cited any authority for the proposition that, after a district court has issued an order divesting itself of jurisdiction over a matter, the parties nonetheless may, by mutual agreement, restore the jurisdiction that the district court itself has relinquished.

Mr. Gossman attempts to support his argument by citing caselaw that is found in other contexts. For example, Mr. Gossman cites cases holding that parties to a written agreement may orally modify the agreement even if the written agreement contains a "no oral modification" clause. *See e.g., Lamberton v. Connecticut Fire Ins. Co.,* 39 Minn. 129, 130–32, 39 N.W. 76, 77–78 (1888); *Larson v. Hill's Heating & Refrigeration of Bemidji, Inc.,* 400 N.W.2d 777, 781 (Minn.App.1987), *review denied* (Minn. Apr. 17, 1987). These cases are not on point. They are concerned only with private contracts between parties; they say nothing about a district court's assertion or divestiture of jurisdiction over a case or issue. *See Lamberton,* 39 Minn. at 129–30, 39 N.W. at 76–77; *Larson,* 400 N.W.2d at 779. Mr. Gossman also cites cases holding that parties to an arbitration agreement may, by mutual agreement or waiver, litigate a dispute in a district court despite their prior agreement to arbitrate the dispute. *See e.g., Brothers Jurewicz, Inc. v. Atari, Inc.,* 296 N.W.2d 422, 428–29 (Minn.1980); *Independent Sch. Dist. No. 35 v. A. Hedenberg & Co.,* 214 Minn. 82, 89–92, 7 N.W.2d 511, 516–18 (1943). But these cases also are not on point, for essentially the same reason. In each case, the district court was not a party to the arbitration agreement and never issued an order that divested itself of jurisdiction over the matter governed by the arbitration agreement. *See Brothers Jurewicz,* 296 N.W.2d at 424–25; *Hedenberg,* 214 Minn. at 83–87, 7 N.W.2d at 514–15. None of the cases cited by Mr. Gossman undermines the rationale of *Karon, Loo,* and *Butt,* which is that a district court's order divesting itself of jurisdiction is not subject to alteration merely by a subsequent agreement of the parties. *See Butt,* 747 N.W.2d at 573; *Loo,* 520 N.W.2d at 744–45; *Karon,* 435 N.W.2d at 503.

Mr. Gossman also attempts to support his argument by relying on the doctrines of waiver and collateral estoppel. Specifically, he contends that Ms. Gossman waived her challenge to the 2010 and 2011 modification orders because she joined in the stipulations that induced the district court to issue the orders, and he further contends that she is collaterally estopped from challenging those orders because she did not timely appeal from the orders.[2] We need not delve into these two doctrines because each must yield to the principle of *Karon, Loo,* and *Butt* that, if a district court has divested itself of jurisdiction over a particular matter, the district court's jurisdiction may not be restored by the parties' mutual agreement.

### C.

The only remaining issue is the effect of the erroneously issued 2010 and 2011 modification orders.

■ Ms. Gossman moved to vacate the 2010 and 2011 modification orders on the ground that the district court did not

---

2. Mr. Gossman arguably failed to preserve the collateral estoppel argument because he did not present it to the district court. His failure to preserve the issue likely would cause this court to decline to consider it on appeal, if it had any merit. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988); *Doe ex rel. Doe v. Columbia Heights Sch. Dist.,* 842 N.W.2d 38, 42–43 (Minn.App.2014). In any event, his argument plainly is inconsistent with the established caselaw.

have jurisdiction to issue the orders. *See* Minn.Stat. § 518.145, subd. 2(4). The statute that governs the vacatur of judgments and orders in dissolution cases is "virtually identical" to rule 60.02 of the Minnesota Rules of Civil Procedure. *Maranda v. Maranda,* 449 N.W.2d 158, 164 n. 1 (Minn. 1989). The statute authorizes a district court to vacate a prior order if the order "is void." Minn.Stat. § 518.145, subd. 2(4). An order is void if the district court did not have jurisdiction to issue the order. *See Bode v. Minnesota Dep't of Natural Res.,* 612 N.W.2d 862, 866 (Minn.2000). If an order is void, the appropriate remedy is vacatur of the order. Minn.Stat. § 518.145, subd. 2(4); *see also Bode,* 612 N.W.2d at 870; *Mesenbourg v. Mesenbourg,* 538 N.W.2d 489, 494 (Minn.App. 1995).

In this case, the district court was authorized by section 518.145, subdivision 2(4), to vacate the 2010 and 2011 modification orders. Given that the parties' *Karon* waiver is valid, the district court did not have jurisdiction to issue the modification orders. Accordingly, the district court was obligated to grant Ms. Gossman's motion to vacate the 2010 and 2011 modification orders. Thus, the district court did not err by doing so.

## II.

■ Ms. Gossman argues that the district court erred by not fully enforcing the original maintenance award. Specifically, Ms. Gossman challenges that part of the district court's October 2012 order in which it denied her motion for entry of judgment against Mr. Gossman for the unpaid portion of Mr. Gossman's maintenance obligation for the period of December 2010 to June 2012.

■ In light of our conclusion that the district court properly vacated the 2010 and 2011 modification orders, we conclude that the district court erred by not giving full effect to the original maintenance award. This court has stated, "Forgiveness of arrearages constitutes a retroactive modification of a maintenance obligation." *Christenson v. Christenson,* 490 N.W.2d 447, 449 (Minn.App.1992), *review granted* (Minn. Jan. 15, 1993), *review dismissed* (Minn. Feb. 16, 1993). By not enforcing Mr. Gossman's maintenance obligation, the district court effectively modified the original maintenance award. Such a modification is inconsistent with *Karon, Loo,* and *Butt* and inconsistent with our analysis above in part I. Furthermore, the supreme court has stated, "The right of [a] plaintiff to recover the money paid pursuant to [a] void judgment is a right to have restored to him that which was obtained by improper use of judicial process." *Henry v. Albert,* 268 Minn. 316, 320, 129 N.W.2d 317, 320 (1964). The same principle should apply to a party that seeks money that was *not* paid because of an order that later is determined to be void. *See Christenson,* 490 N.W.2d at 449. The district court's reasoning that entering a judgment against Mr. Gossman for the full amount owed "would not be fair or equitable" is inconsistent with the district court's decision to vacate the 2010 and 2011 modification orders and inconsistent with our conclusion that those orders were and are void.

Thus, the district court erred by denying Ms. Gossman's first motion to enforce the original maintenance award.

## DECISION

The district court did not err by vacating the 2010 and 2011 modification orders on the ground that the orders are void. The district court erred by not fully enforcing the original maintenance award. Therefore, we affirm in part, reverse in part, and remand. On remand, the district

court shall enter a judgment in favor of Ms. Gossman and against Mr. Gossman that accounts fully for the difference between the amounts paid by Mr. Gossman and his obligation to pay temporary spousal maintenance of $5,000 per month.

**Affirmed in part, reversed in part, and remanded.**

Concurring specially, RODENBERG, Judge.

Concurring in part, dissenting in part, RANDALL, Judge.*

RODENBERG, Judge (concurring specially).

I concur with the majority opinion in all respects. The applicable decisions of the Minnesota Supreme Court require that we both affirm the district court's order vacating the earlier void orders modifying the original maintenance award and reverse the district court's denial of the motion to enforce the resulting maintenance arrearage.

If we were to reach the "equities" of whether appellant's maintenance arrearage ought to be forgiven, which I do not believe that we can under established precedent, I am not convinced that a district court faced with a bargained-for agreement under *Karon*[1] and Minn.Stat. § 518.552, subd. 5 (2012), should apply some undefined equitable salve to the wound of which appellant complains—that he should be made to adhere to the global settlement to which he agreed, and that the district court adjudged cannot be modified.

*Karon* waivers do not drop from the sky, arbitrarily harming one party and serendipitously benefitting another. They result from negotiations concerning the many and varied issues that divorcing spouses need to resolve. One spouse desires permanent maintenance, while the other thinks that little or no maintenance is warranted. The spouses disagree about which of them should be awarded the homestead or the business assets, and on what conditions those assets should go to one or the other of them. They disagree about whether either or both of them can trace an inheritance or gift to any now-existing marital property. They dispute the values of vehicles and pension plans and who should pay which debts. And a *Karon* waiver is sometimes a tool selected by spouses and their lawyers to arrive at a global settlement. The line of cases on which we rely assures divorcing parties of this much: if they make an agreement that includes a *Karon* waiver, Minnesota's courts will not disregard that waiver, the finality of which is every bit as important as the finality of the award of the homestead or of the division of debt.

Although the finality afforded to the type of agreement with which we are concerned was initially a judicial development based on the parties' agreement that the district court would be "divested of jurisdiction," *Karon*, 435 N.W.2d at 501, our legislature enacted and the governor signed into law what is now codified at Minn.Stat. § 518.552, subd. 5. The statute avoids the exquisite question of whether the finality of a *Karon* waiver depends on "jurisdiction" or on something else. *See Moore v. Moore*, 734 N.W.2d 285, 287 n. 1 (Minn.App.2007), *review denied* (Minn. Sept. 18, 2007). But the statute amounts to a legislative adoption of the principles of finality enunciated in *Karon* and its progeny.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. *Karon v. Karon*, 435 N.W.2d 501, 503 (Minn.1989) (superseded in part by Minn. Stat. § 518.552, subd. 5).

We don't know much on appeal about how it came to be that appellant entered into the marital termination agreement in this case or the circumstances of his signing the agreement without counsel. We don't know whether the overall agreement to resolve the issues in this dissolution was favorable or unfavorable to him at the time. We do know that he makes no argument that he was defrauded. And we know that the marital termination agreement resolved an array of issues, only one of which was that appellant would pay respondent spousal maintenance of $5,000 per month for five years on the condition that *neither the parties nor the district court* could change the amount or duration. The district court entered a judgment including the provision that it "is divested of jurisdiction to modify the maintenance provisions herein." And appellant sought to modify *only* the maintenance provision of the judgment.

Regardless of the precise theoretical underpinnings, *Karon* and its progeny consistently hold—and allow divorcing parties to rely on—the simple principle that a deal is a deal. "[T]he decree is final absent fraud." *Karon*, 435 N.W.2d at 503.[2]

Today's decision is an additional reminder, if one were necessary, that a *Karon* waiver should only be entered into carefully and thoughtfully. Consistent with caselaw and statute, we enforce the parties' agreement that the maintenance obligation may not be modified even by later expression of a desire by the parties that it be modified.

RANDALL, Judge (concurring in part and dissenting in part).

I concur, with reservations, with the majority opinion on the issue of jurisdiction.

But it is grossly inequitable to retroactively require Jonathan Gossman to pay Melissa Gossman the $59,170 in maintenance that, under three separate agreements of the parties as well as the 2010 and 2011 *orders of the district court*, Jonathan Gossman did not pay. I respectfully dissent from that portion of the majority's opinion (re)imposing that obligation.

## A. Jurisdiction

It is not clear to me that the district court does, in fact, lack "jurisdiction" to address maintenance. Addressing a district court's ability to modify spousal maintenance, this court observed:

Numerous Minnesota appellate opinions refer to the fact that a district court can address maintenance only if a maintenance obligation exists or if the district court reserved the maintenance question. Many of those opinions further state that this limitation is a limitation on the district court's "jurisdiction." Recently, however, the United States Supreme Court, the Minnesota Supreme Court, and this court have all acknowledged that courts and parties often use concepts and language associated with "jurisdiction" imprecisely to refer to, among other things, nonjurisdictional claims-processing rules or nonjurisdictional limits on a court's authority to address a question. The outcome of this appeal will be the same whether the district court lacked subject-matter jurisdiction to address wife's motion to modify maintenance or lacked authority to address her motion. Therefore, we need not decide whether the existence of an obligation to pay spousal maintenance or a reservation of maintenance

2. A motion under Minn. R. Civ. P. 60 *might*, in appropriate circumstances, entitle litigants to relief from a *Karon* waiver. There was no such motion here.

goes to a district court's subject-matter jurisdiction to address maintenance, and this opinion simply refers to the district court's authority to address maintenance.

*Moore v. Moore,* 734 N.W.2d 285, 287 n. 1 (Minn.App.2007), *review denied* (Minn. Sept. 18, 2007) (quotations and citations omitted).

I agree that the supreme court's decision in *Butt v. Schmidt,* 747 N.W.2d 566 (Minn.2008) was filed after the opinions highlighting the imprecise use of the word "jurisdiction" to refer to concepts that are not, in fact, jurisdictional. I also agree that *Butt* referred to *Karon* waivers as depriving a district court of "jurisdiction" to modify spousal maintenance. *See Butt,* 747 N.W.2d at 572. *Butt,* however, does not address whether it uses the word "jurisdiction" is its technical sense [1] or in the undifferentiated sense that the word "jurisdiction" was used in cases decided before issuance of the opinions recognizing the prior systematically imprecise use of the word "jurisdiction" to refer to concepts that are not, in fact, jurisdictional. *Butt's* mere use of the word "jurisdiction" does not convince me that a *Karon* waiver actually deprives the district court of "jurisdiction" in the technical sense of the term. *See Skelly Oil Co. v. Comm'r of Taxation,* 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating that "the language used in an opinion must be read in the light of the issues presented"); *Chapman v. Dorsey,* 230 Minn. 279, 288, 41 N.W.2d 438, 443 (1950) (stating that decisions by the supreme court based on the assumption that those decisions were appealable, which did not actually *address* whether those decisions were appealable, were not precedential regarding whether those decisions

were, in fact appealable); *In re Rollins,* 738 N.W.2d 798, 802–03 (Minn.App.2007) (applying these aspects of *Skelly* and *Chapman*); *Peterson v. Holiday Recreational Indus., Inc.,* 726 N.W.2d 499, 504 n. 1 (Minn.App.2007) (same), *review denied* (Minn. Feb. 28, 2007).

## B. Equity

Be that as it may on the issue of jurisdiction, the error in the majority opinion is the reversal on the equitable issue of retroactive maintenance. The district court found that the parties acted in "good faith" by agreeing to reduce Jonathan Gossman's maintenance obligation, that the parties "relied upon" these agreements, and that "[t]herefore" it "would not be fair or equitable" to now (re)impose on Jonathan Gossman the obligation to pay Melissa Gossman the $59,170 in maintenance. The district court stated:

Both parties had believed in good faith that they had changed the amount of spousal maintenance with the *stipulations submitted and signed by the Court.* The evidence indicates that the parties relied upon the stipulations. Therefore, the Court finds that an order requiring [Jonathan Gossman] to pay the $59,179.00 sought by [Melissa Gossman] for unpaid spousal maintenance would not be fair or equitable. The amount of spousal maintenance laid out in the Judgment and Decree of $5,000.00 per month shall resume on [June] 26, 2012.

(Emphasis added.)

The factual findings underlying these determinations by the district court are not clearly erroneous and are supported by this record. Reversing the district

---

1. *Butt* does not identify the type of jurisdiction at issue. While I suspect that *Butt* was not referring to personal jurisdiction, it is not entirely clear to me whether it was referring to subject matter jurisdiction, in rem jurisdiction or something else.

court's otherwise equitable resolution of this case is tantamount to ruling that the district court had no power to achieve an equitable result in this case.

Ruling that a district court cannot equitably resolve a family case is inconsistent with the nature of family law, which, while addressed by statute, is inherently equitable in nature. *See, e.g., Holmberg v. Holmberg,* 588 N.W.2d 720, 724 (Minn. 1999) (stating that "cases involving family law fall within the district court's original jurisdiction" because "[f]amily dissolution remedies, including remedies in child support decisions, rely on the district court's inherent equitable powers"); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755, 758 (Minn. 1981) (noting that "[a]lthough dissolution is a statutory action and the authority of the trial court is limited to that provided for by statute, the district courts are guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship" and "therefore" that the district court "has inherent power to grant equitable relief as the facts in each particular case and the ends of justice may require"); *Johnston v. Johnston,* 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968) (noting that "[s]ince the jurisdiction of the district court in divorce actions is equitable, relief may be awarded as the facts in each particular case and the ends of justice may require").

Similarly, the ability of a district court to equitably resolve a family case is not necessarily limited by statute. *See, e.g., In re Child of E.V.,* 634 N.W.2d 443, 449 (Minn.App.2001) (noting, on appeal of a termination of parental rights, that "Justice Cardozo stated the equity court has inherent power to order a statutorily prohibited remedy in the best interests of the child[,]" and that "Minnesota courts have invoked their inherent power to grant equitable relief as the facts in each particular

case and the ends of justice may require"); *Kimmel v. Kimmel,* 392 N.W.2d 904, 908 (Minn.App.1986) (acknowledging, in the context of a custody modification dispute arising out of a domestic abuse incident, that the district court had the equitable authority to disregard statutory procedures when a child's welfare was endangered). Further, prior court decisions do not necessarily preclude a district court from resolving a case in what, on the facts and circumstances of that case, is an equitable manner. *C.f., Dobrin v. Dobrin,* 569 N.W.2d 199, 201 (Minn.1997) (reminding counsel that "each marital dissolution proceeding is unique and centers upon the individualized facts and circumstances of the parties and that, accordingly, it is unwise to view any marital dissolution decision as enunciating an immutable rule of law applicable in any other proceeding").

I do not suggest that a district court's discretion to act equitably in family cases is unbounded. But I state that when a district court makes an equitable decision of a family law case, it is always reviewable. Our review should be cautious. *Vangsness v. Vangsness,* 607 N.W.2d 468, 477 (Minn.App.2000) (stating that "[i]n the present state of the law, there is no specific, restrictive legal standard for a trial court to use when placing custody in a dissolution proceeding, and there is no articulated, specific standard of law available for use of the appellate court when reviewing whether a best-interests determination, supported by defensible findings that address relevant best-interests factors, constitutes an abuse of trial court discretion or misapplication of the law[,]" and noting that "[p]ut differently, current law leaves scant if any room for an appellate court to question the trial court's balancing of best-interests considerations [in a custody dispute]").

I point out two things: First, the majority's analysis reverses the district court based primarily on a legal analysis, and without thoroughly addressing the essence of the case, the equities. Given the uniquely broad scope of the district court's inherent (extra-statutory) equitable authority in family matters, the majority's analysis is insufficient to support a reversal on the issue of retroactivity. Second, any examination of the equities of this case must acknowledge that the parties agreed not once, not twice, but *three* times that Jonathan Gossman would not pay the maintenance in question, and that two of those agreements were *presented to and adopted by* the district court when it incorporated those agreements into its 2010 and 2011 orders. The district court found that these parties "relied upon" those agreements and orders in arranging their lives. The district court's resolution of the dispute generating this appeal honors those *five* separate approvals of the idea that Jonathan Gossman should not have to pay the maintenance in question, as well as the reliance the parties have put on those approvals since 2010. Whatever the limits on a district court's ability to do equity in a family case, *this* district court's resolution of *this* case is unambiguously within those limits. To the extent that a legal analysis suggests that Jonathan Gossman must now (re)pay maintenance that, on *five* separate occasions, the parties and the court concluded he should not have to pay (and the nonpayment of which is something around which the parties ordered their lives), Jonathan Gossman is without an adequate remedy at law (according to the majority) for the prejudice generated by the retroactive (re)imposition of that obligation.

On this record, I would affirm the district court on retroactivity. I respectfully dissent from the (re)imposition on Jonathan Gossman of the obligation to pay the maintenance that the parties and the district court previously agreed that he should not have to pay.