*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A14-0105

In re the Marriage of: Terry John Hietpas, petitioner,
Appellant,

vs.

Barbara Elizabeth Reed
f/k/a Barbara Elizabeth Reed Hietpas,
Respondent

**Filed December 8, 2014**
**Affirmed in part and reversed in part**
**Worke, Judge**

Ramsey County District Court
File Nos. 62-F6-07-000592, 62-F4-07-300423,
62-FX-07-300409, 62-DA-FA-09-906

Linda S.S. de Beer, Jenna Kraemer Monson, Lake Elmo, Minnesota (for appellant)

Ellen Weinberg, Albert Lea, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Kirk, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellant-husband argues that the district court erred by exercising jurisdiction over a motion to modify spousal maintenance when the parties' judgment and decree purported to have a *Karon* waiver. Alternatively, he argues that if the court had

jurisdiction, the court abused its discretion by modifying spousal maintenance, failing to consider newly discovered evidence, and limiting appellant's ability to bring a future spousal-maintenance-modification motion. Because the judgment and decree did not include a proper *Karon* waiver, the district court properly exercised jurisdiction and did not abuse its discretion in modifying spousal maintenance; thus, we affirm in part. But, because the district court abused its discretion by restricting appellant's ability to bring a future spousal-maintenance-modification motion, we reverse in part.

## FACTS

Appellant Terry John Hietpas and respondent Barbara Elizabeth Reed, f/k/a Barbara Elizabeth Reed Hietpas, dissolved their marriage in May 2008. Their decree provided that:

> [C]ommencing December 1, 2007, [Hietpas] shall pay [Reed] $3,650 per month . . . until December 31, 2012. . . .
> Either party may request a modification of the spousal maintenance payments pursuant to the statutory language. However, the parties agree that [Hietpas's] spousal maintenance payments to [Reed] shall never be higher than $3,650 per month.
> [Reed] expressly waives her right to receive any spousal maintenance from [Hietpas] after December 31, 2012. [Reed's] waiver is based on a *Karon* waiver, the length of the marriage and [Reed's] ability to earn a level of income sufficient to support herself and the minor children.

The parties stipulated that Reed had the potential to earn $30,000 in 2008, $40,000 in 2009, and $50,000 in 2010. The parties were required to attempt mediation prior to requesting spousal-maintenance modification.

2

On December 28, 2012, three days before Hietpas's original spousal-maintenance obligation expired, Reed moved to extend it. The district court waived the decree's mediation requirement and held a hearing. The district court found that the decree did not include a valid *Karon* waiver and that Reed met her burden showing a substantial change in circumstances. The court extended Hietpas's maintenance obligation for an additional five years, but allowed him to move to modify maintenance after Reed secured employment for 12 continuous months at an income of more than $75,000 per year.

Hietpas then moved for amended findings and a new trial claiming that Reed failed to show a substantial change in circumstances and there was newly discovered evidence regarding Reed's employment. The district court denied Hietpas's requests, but changed Reed's threshold earning requirement to $50,000. Hietpas appeals.

## D E C I S I O N

**Jurisdiction**

### *Karon* **waiver**

Hietpas argues that the district court lacked jurisdiction over Reed's motion to modify spousal maintenance because the judgment and decree included a *Karon* waiver. "[We] review[] questions of law related to spousal maintenance de novo[,]" *Melius v. Melius*, 765 N.W.2d 411, 414 (Minn. App. 2009), including questions regarding jurisdiction and statutory interpretation. *Gossman v. Gossman*, 847 N.W.2d 718, 721 (Minn. App. 2014).

The courts are without authority to modify spousal maintenance when parties execute what is commonly called a *Karon* waiver. *Id.* at 722. A *Karon* waiver is more

3

than an agreement between the parties. *Id.* at 724. It divests the court of jurisdiction over spousal maintenance when the following requirements are met:

> 1) the stipulation must include a contractual waiver of the parties' rights to modify maintenance; 2) the stipulation must expressly divest the district court of jurisdiction over maintenance; 3) the stipulation must be incorporated into the final judgment and decree; and 4) the court must make specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party's financial circumstances has occurred[.]

*Butt v. Schmidt*, 747 N.W.2d 566, 573 (Minn. 2008) (quotation and citations omitted); *see* Minn. Stat. § 518.522, subd. (2012) (addressing statutorily-required elements for a *Karon* waiver). Reed claims that the *Karon* waiver was invalid because the stipulation lacked language divesting the court of jurisdiction and the court did not make specific findings that the stipulation was fair and equitable.

A *Karon* waiver must contain two elements to properly divest the court of jurisdiction: "(1) a contractual waiver of the statutory right to move for modification of maintenance" and "(2) express language divesting the court of jurisdiction to consider motions for modification of spousal maintenance." *Gossman*, 847 N.W.2d at 723 (quotation omitted).

In *Loo v. Loo*, the supreme court concluded that the following waiver contained a contractual waiver, but not express divestiture language:

> That the Petitioner shall pay to the Respondent . . . spousal maintenance . . . for a total period of payment of nine years. After the last of the payments required above, the obligation for spousal maintenance shall terminate

4

irrevocably. Thereafter neither of the parties shall be entitled to [maintenance] then or in the future.

520 N.W.2d 740, 745 (Minn. 1994). The court noted that courts "should not assume that parties specifically bargained to supplant the statutory modification procedure without a clear or express statement divesting the court of jurisdiction[,]" *id.*, and that "the better approach is to require both a contractual waiver *and* express language divesting the court of jurisdiction." *Id.* at 745 n.5 (emphasis added).

Here, it is undisputed that the judgment and decree contains a contractual waiver. And the parties placed the following agreement on the record prior to the entry of the judgment and decree:

> [Reed's attorney]: [Y]ou [Reed] understand that you'll be receiving . . . temporary maintenance for a term of five years at a set amount, but after that five years you won't be able to receive anymore maintenance for whatever reason whatsoever, and the [c]ourt wouldn't even have jurisdiction to entertain a claim for maintenance; is that correct?
> [Reed]: Correct.
> [Reed's Attorney]: And you understand and agree to be bound by it?
> [Reed]: Yes.

But the judgment and decree does not contain specific divestiture language or language incorporating this on-the-record stipulation. Therefore, the judgment and decree does not meet the express-divestiture-language requirement.

Hietpas concedes that there are no specific findings in the judgment and decree stating that the agreement is fair and equitable as required for a *Karon* waiver. But, he contends that by approving the judgment and decree, the district court necessarily found it fair and equitable. "However, a stipulated divestiture of jurisdiction is effective only if

5

the [district] court, in adopting the stipulation, makes specific *written* findings that the stipulation is fair and equitable and supported by specified consideration, and that both parties have made full financial disclosures." *Santillan v. Martine*, 560 N.W.2d 749, 751 (Minn. App. 1997) (emphasis added). The *Loo* court was also "concerned that there [was] little indication in the record that the [district] court . . . took an active role in determining that the decree at issue was fair and equitable." 520 N.W.2d at 745. Here, there is no indication that the district court assumed that role. Therefore, the *Karon* waiver also fails on this prong.

Hietpas claims that even with the deficiencies the *Karon* factors are incorporated because the judgment and decree names their agreement a *Karon* waiver. But a "label or title is not determinative." *Grachek v. Grachek*, 750 N.W.2d 328, 333 (Minn. App. 2008), *review denied* (Minn. Aug. 19, 2008) (stating use of the heading "*Karon* waiver" did not support argument that parties intended to preclude cost-of-living adjustment). And both the caselaw discussed above and Minn. Stat. § 518.552, subd. 5 require specific language and incorporation into a judgment and decree. Because of the significant limitations a *Karon* waiver places not only on a party's ability to modify spousal maintenance but also on a court's jurisdiction, merely titling the agreement a "*Karon* waiver" is insufficient to remedy language missing from the judgment and decree.

**Mediation**

Hietpas next argues that because Reed did not attempt mediation prior to moving to modify maintenance, the district court lost jurisdiction as it had no proper motion before it when the original spousal-maintenance term expired. However, the failure to

6

mediate does not raise a jurisdictional issue. *See Moore v. Moore*, 734 N.W.2d 285, 287 n.1 (Minn. App. 2007) (stating that courts and parties often use concepts and language associated with "jurisdiction" imprecisely to refer to nonjurisdictional limits on a court's authority to address a question), *review denied* (Minn. Sept. 18, 2007).

Hietpas cites *Buntje v. Buntje* for the proposition that Reed should have served her motion and requested an abeyance for mediation. 511 N.W.2d 479, 481-82 (Minn. App. 1994). In *Buntje*, this court held that a child-support modification can only be made retroactive to the date a motion is served, and not the date a request for mediation is made. *Id.* at 482. The issue in *Buntje* was determining the date to which child-support modification was retroactive; it is not applicable here as it does not address whether the district court can waive a mediation requirement. Additionally, the district court found that Hietpas declined to participate in mediation after Reed filed her motion, undermining Hietpas's proposition.

The parties have had ongoing conflict for many years. The district court made specific findings regarding the parties' inability to resolve issues without court intervention and deliberately waived the mediation requirement. We conclude that the district court did not abuse its discretion or lose jurisdiction by waiving the mediation requirement.

**Spousal maintenance**

Hietpas next argues that the district court abused its discretion by extending spousal maintenance because Reed did not demonstrate a substantial change in circumstances that made the original award unreasonable and unfair. This court reviews

7

the district court's maintenance award for an abuse of discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). "A district court abuses its discretion regarding maintenance if its findings of fact are clearly erroneous." *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). "Findings of fact are clearly erroneous when they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted). The reviewing court views the record in the light most favorable to the district court's findings and defers to the district court's credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

A district court has broad discretion to modify a spousal-maintenance award. *Youker v. Youker*, 661 N.W.2d 266, 269 (Minn. App. 2003), *review denied* (Minn. Aug. 5, 2003). To justify a modification, the moving party "bears the burden of showing a substantial change of circumstances . . . since [maintenance] was originally set." *Id.* Such a change in circumstances must be sufficient to render the original award "unreasonable and unfair." Minn. Stat. § 518A.39, subd. 2(a) (2012). When the moving party fails "to present clear proof of a substantial change in circumstances," the district court is not required to consider other statutory factors. *Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn. App. 1987). Changed circumstances can be established by showing a substantial decrease in the gross income of the obligee. Minn. Stat. § 518A.39, subd. 2(a)(1).

Hietpas argues that the district court abused its discretion in modifying spousal maintenance by: (1) using Reed's actual income, rather than her potential income stated in the decree, to determine whether there had been a substantial change in circumstances;

(2) miscalculating Reed's income; and (3) improperly considering Reed's mental health as a change in circumstances.

At the time of the judgment and decree, the parties stipulated that by the end of the original maintenance period, Reed would be capable of earning at least $50,000 annually. Reed asserts that her unsuccessful efforts to find a stable job paying this amount shows that she does not have the earning capacity anticipated at the time of the judgment and decree.

Reed's annual earnings, with the exception of 2012, fell significantly below her anticipated earning capacity. At the time of her motion to modify spousal maintenance, she was receiving $385 per week in unemployment benefits. Although Reed took some time off beginning in 2009 to earn her MBA, she claimed her job credentials as an attorney were otherwise stale. In 2012, she worked steadily for eight months earning approximately $30,000 until she was laid off due to an insufficient workload. She increased her total 2012 earnings to approximately $48,400 through unemployment-insurance benefits and short-term work. The district court found that since being laid off Reed applied for numerous jobs and that she was registered with four employment-search organizations. *But see Hecker v. Hecker*, 568 N.W.2d 705, 710 (Minn. 1997) (concluding it was appropriate to offset spousal-maintenance award by wife's ability to earn when she did not take any efforts to rehabilitate herself). While Hietpas argues that the district court erred by analyzing Reed's actual income, the district court found that she did not have the ability to earn the amount contemplated in the judgment and decree given her difficulty in finding and especially maintaining a job. The

9

district court specifically stated that "[g]iven the struggles [Reed] experienced stabilizing her mental health, it is not surprising that [she] has not been able to reach the parties' anticipated earning capacity agreed to in the [d]ecree."

Hietpas argues that there was not a substantial decrease in Reed's income based on her actual earnings. Hietpas cites several ways for a court to calculate income. However, Hietpas does not show that the district court's chosen calculation method was improper. The district court reviewed Reed's annual income during the periods she received spousal maintenance, and noted that "[e]ven [in 2012,] the year which [Hietpas] points to which is the apex of her earning history since the [d]ecree, [Reed] combined two separate jobs and receipt of unemployment[-]insurance benefits to earn $48,400." Although at one point Reed had a higher-income job, she was unable to maintain this job. Hietpas does not establish that, contrary to the district court's findings, Reed is capable of finding and keeping a similar paying job.

The district court considered Hietpas's argument that Reed at one point had a high-paying job, and made specific findings as to why Reed's temporary earnings were not representative of her ability to continue earning at that level. We conclude that the district court did not abuse its discretion in finding that Reed's potential annual income at the time of her motion—based on her unemployment-insurance benefits and past earning history—was $32,597. *See Hecker*, 568 N.W.2d 709-10 n.3 (stating that a party's failure to satisfy assumption underlying a district court's ruling can constitute the substantial change in circumstances allowing modification of that ruling).

Hietpas also argues that the district court clearly erred by finding that Reed's mental-health issues prevented her from maintaining employment. The district court found that Reed "has appropriately focused on the services to improve her mental health for herself and the children, at the expense of her ability to earn a living." After Hietpas moved for amended findings, the district court found that "[w]hile it is true that [Reed] experienced mental[-]health issues at the time of the stipulation, the parties could not have anticipated how the impact and continued persistence of her mental illness would affect her earning capacity."

Hietpas claims that there is nothing in the record to support claims that Reed's mental health negatively impacted her ability to be employed. Although Hietpas again points to the fact that Reed was able to obtain a high-paying job, the ability to obtain a job and to keep a job are two different skills. Reed submitted an affidavit regarding her financial need stating that her high-paying job was eliminated because of a lack of work, not because of her performance. However, this does not exclude the possibility that her mental health kept her from successfully meeting the billable-hours requirement of her position or finding another job. It is undisputed that Reed suffered from significant mental-health issues and after a careful review of the record, we conclude that the district court did not clearly err in finding that these issues affected her earning capacity.

Hietpas asserts that even if Reed showed a substantial change in circumstances, she failed to show that any change made the original decree unreasonable and unfair. *See* Minn. Stat. § 518A.39, subd. 2(a). One factor that makes the terms of an order unfair is the substantially decreased gross income of an obligee. *Id.*, 2(a)(1). A substantial

decrease in income makes the "terms of a current support order . . . rebuttably presumed to be unreasonable and unfair" when "the gross income of an . . . obligee has decreased by at least 20 percent through no fault or choice of the party." *Id.*, subd. 2(b)(5) (2012).

While the parties dispute Reed's income, we conclude that the district court's calculation of Reed's potential annual income of $32,597 was not an abuse of discretion. This is more than 20% less than the $50,000 the parties presumed Reed could earn at the time of the judgment and decree, and under the statute constitutes an amount that creates a presumption of a substantial change in circumstances, and a rebuttable presumption that the existing maintenance award is unreasonable and unfair. On this record, these presumptions are unrebutted.

Finally, Hietpas argues that the amount and duration of the spousal-maintenance award is not supported by the record. The district court does not address why it chose to extend spousal maintenance for an additional five years. But the district court is not required to state with specificity why it chose a particular spousal-maintenance duration, provided it addresses relevant factors required by statute, which it did. *See* Minn. Stat. § 518.552 (2012).

**New Evidence**

Hietpas asserts that the district court abused its discretion by failing to consider newly discovered evidence of Reed's recent gain of employment.[1] Hietpas claims that

---

[1] Hietpas also sought a new trial. But proceedings to modify support are "special proceedings" and not trials. *Angelos v. Angelos*, 367 N.W.2d 518, 520 (Minn. 1985). And, new trial motions are unauthorized for special proceedings. *Huso v. Huso*, 465

12

after the hearing he became aware that Reed had obtained full-time employment earning $52,000 per year.  The district court chose not to consider this evidence because even if Reed had begun working, she had not been employed in the same position long enough that the information would have changed the outcome.  The district court noted that "[c]ommencement of employment is not the same as the ability to sustain employment, which is the challenge for [Reed]."  Because Reed had not been employed for a sufficient period such that the information would have altered the findings, we conclude the district court did not abuse its discretion by declining to consider the new information.

**Restriction of motion**

Hietpas lastly argues that the district court abused its discretion by restricting his ability to move to modify maintenance until Reed had maintained employment at the income level contemplated in the judgment and decree for 12 months.  Caselaw and statutes do not address the restriction of motions not related to frivolous litigation or improper communications with the court.  *See, e.g.*, *In re Burns*, 542 N.W.2d 389, 390 (Minn. 1996) (upholding limitations on pro se party's excessive inappropriate communications with district court).  But the district court's rationale can be easily understood: the parties have extremely high conflict, and Reed has been able to secure but not maintain several jobs.  However, this is not enough to limit a motion to modify spousal maintenance.  Minn. Stat. § 518A.39, subd. 2 (2012) allows modification for numerous reasons other than changes in Reed's income, including a change in Hietpas's

N.W.2d 719, 720-21 (Minn. App. 1991).  Therefore, the district court did not abuse its discretion in denying Hietpas's motion for a new trial.

13

income. Because of the factors that could lead to Hietpas properly moving to modify spousal maintenance, we conclude that the district court abused its discretion by prohibiting him from bringing any spousal-maintenance motion. We reverse this restriction.

**Affirmed in part and reversed in part.**